Daniel Lyons, Respondent, *v.* The Erie Railway Company, Appellant.

One who is injured by the negligence of another is bound to use ordinary care to effect his cure and restoration; but he is not responsible for a mistake, and when he acts in good faith and under the advice of a competent physician even if it is erroneous, the error will not shield the wrong-doer.

Accordingly, *held*, in an action to recover damages for injuries alleged to have been sustained by defendant's negligence, where defendant had given evidence tending to show that exercise taken by plaintiff might have tended to retard recovery, and that quiet would have been better, that evidence that plaintiff was advised by his physician that it was right and beneficial to exercise was proper.

(Argued January 16, 1874; decided May term, 1874.)

Appeal from judgment of the General Term of the Supreme Court in the third judicial department, affirming a judgment in favor of plaintiff entered upon a verdict.

This was an action to recover damages for injuries received by the plaintiff, a passenger upon defendant's road, in April, 1868, at what is called the Carr's Rock disaster.

The plaintiff recovered $20,000. The facts appear suffi-
ciently in the opinion.

*O. W. Chapman* for the appellant.

*Giles W. Hotchkiss* for the respondent. The court prop-
erly allowed plaintiff to state what advice was given him by
one of his physicians as to exercise. (*McAleer* v. *McMur-
ray*, 58 Penn., 126.)

Earl, C. The place where the plaintiff was injured is in
the State of Pennsylvania, and the defendant claims, there-
fore, the benefit of the statute of that State, which limits the
recovery in such cases to $3,000. This claim is disposed of
by the decision of the Court of Appeals in *Dyke* v. *Erie
Railway Co.* (45 N. Y., 113), a case growing out of the same
disaster, in which it was held that the Pennsylvania statute
did not limit the amount of the damages which could be
recovered.

The plaintiff's injuries were very severe, in several respects
disabling him. There was some evidence that the plaintiff,
prior to the trial, at various times, moved about considerably
and attended to some business. There was also some evidence
tending to show that a state of quietude and rest was more
favorable to his recovery, and that his recovery might have been
retarded by the exercise which he took and the exertions which
he made. Nobody had advised him that he must remain in his
house and keep quiet, and he testified that he felt better when
he could get out. One day he called in a physician and asked
his advice about it. He told the physician that it was killing
him to be confined to the house, and that he felt better when
he could get out of doors; and the physician advised him that
it was right — the best thing he could do. The defendant's
counsel objected to the proofs of this advice, and excepted
to the ruling of the court admitting it. This ruling is now
claimed to have been erroneous. I think it was right.
When one receives an injury through the carelessness of

another, he is bound to use ordinary care to cure and restore himself. He cannot recklessly enhance his injury and charge it to another. If his arm be broken he cannot omit to have it set, and charge the loss of the arm to the wrong-doer. He is not obliged to employ the most skillful surgeon that can be found, or resort to the greatest expense to ward off the consequence of an injury which another has inflicted upon him. He is bound to act in good faith and to resort to such means and adopt such methods reasonably within his reach as will make his damage as small as he can. But suppose he makes a mistake and innocently eats or exercises so as to retard his cure or impair his chances of recovery; or suppose he employs a physician who makes a mistake in his treatment, so that he is not as well or as soon restored as he otherwise would have been; who is to be responsible for the mistake? Can the wrong-doer, who has placed him in the position where he must make the choice of remedies and doctors, take advantage of such mistake? Can he shield himself from all the consequences of his wrong because the injured man has not adopted the best means and employed the best doctors? I think not. A wrong-doer breaks an arm; the injury is then done, and the arm for the time is destroyed. He cannot complain that the injured person has failed to restore it so long as he has acted in good faith in its treatment, using the ordinary means within his reach.

In this case the plaintiff, acting in good faith, consulted a competent physician, who advised him to take exercise. Even if this advice was mistaken, it shielded him against the charge that he recklessly, willfully or carelessly exposed his health or retarded his recovery. To illustrate further, suppose a competent physician had rightfully advised him that he must get out and take exercise, and he had persistently and willfully remained in his house, and had thus aggravated his injuries and postponed or retarded his recovery, could not the defendant have properly shown these facts, as bearing upon the extent of its liability? We must, therefore, hold that the advice given was competent, not to cast upon the

defendant any damage which it did not occasion, but to show that the plaintiff acted in good faith and used proper care to mitigate the damage which the defendant did occasion. (1 Greenleaf on Evidence, § 101.)

This brings us to the only other ground upon which the defendant asks for a reversal of the judgment. The case states that, while plaintiff's counsel was summing up to the jury, he proposed to read to the jury as a part of his argument certain portions of a work entitled "Erickson on Railway Injuries," to which defendant's counsel objected. The court ruled that the counsel might read to the jury, as part of his argument, but not as evidence in the case, as he might read portions of a newspaper, for the same purpose, that were applicable. Defendant's counsel excepted to this ruling. The case does not disclose what plaintiff's counsel read, nor even that he read anything. Hence this exception cannot avail.

The judgment must be affirmed, with costs.

All concur; GRAY, C., not sitting.

Judgment affirmed.