RADMAN *v.* HABERSTRO.

(*Supreme Court, General Term, Fifth Department.* June 23, 1888.)

1. MASTER AND SERVANT—LIABILITY OF MASTER—DEFECTIVE APPLIANCES.
   Defendant's foreman, who desired to lower some 30-barrel casks into the cellar of a brewery, called upon the plaintiff, who was in another's employ, to assist. The casks were lowered by an ordinary windlass, having an iron shaft, and operated by means of two cranks fitted upon either end of the shaft, in the ends of which were holes through which pins could be put to keep the cranks in place. The machine had no brake, but the foreman procured a frosty plank, which, by resting one end on a block, and lifting on the other, he pressed against the fly-wheel, and made serve as a brake. The pins had been lost from the shaft, and the foreman testified that he fastened the cranks with spigots and 10-penny nails. Plaintiff and another operated one crank, and two other men the other crank. In lowering the third cask the crank slipped from one end of the shaft, and the cask went down with such rapidity that it threw the crank from the other end, injuring plaintiff's hand. *Held*, that there was sufficient evidence of negligence to go to the jury.

2. SAME—ASSUMPTION OF RISK.
   A stranger who is asked to assist in lowering heavy casks into a cellar, by means of a windlass with which he is unfamiliar, and which is situated in a dimly lighted cellar, cannot be said, as a matter of law, to be guilty of contributory negligence in not observing that the cranks are not properly fastened, or that the brake is not a proper one.

3. NEGLIGENCE—ACTION FOR MALPRACTICE—ELECTION OF INCONSISTENT REMEDIES.
   Bringing an action against a physician for malpractice, through which it was alleged the plaintiff lost his hand, is not an election between inconsistent remedies, which will prevent an action against the party through whose negligence the plaintiff's hand was injured.

4. SAME—EXTENT OF RECOVERY.
   If one whose hand was injured by the negligence of defendant employed at the time a physician or surgeon competent to treat an injury of that kind, and obeyed his instructions, and was guilty of no negligence on his part in the treatment of the wound, which progressed, from causes beyond the control of the surgeon, until the arm had to be amputated, he is entitled to recover for the loss of his arm.

5. WITNESS—EXAMINATION—CROSS-EXAMINATION.
   Where defendant's foreman was called as a witness, and testified as to the way in which he fixed the hoisting-machine by which plaintiff was injured, and that he had so fixed the machine in another brewery where he worked, it is competent to ask him, upon cross-examination, what sort of a machine they had in the brewery where he worked before.

6. EVIDENCE—OPINIONS—NEGLIGENCE.
   It is not competent for defendant's foreman, who was not an expert machinist, to testify as to whether the cranks of a windlass, attached in the way he had attached them, could come off in the hands of men operating the machine, without carelessness on their part, the question of negligence being for the jury.

Appeal from circuit court, Erie county.

Before BARKER, P. J., and HAIGHT, BRADLEY, and DWIGHT, JJ.

*George L. Kingston,* for appellant. *William Armstrong,* for respondent.

HAIGHT, J. This action was brought to recover damages for a personal injury. The defendant was the proprietor of a brewery in the city of Buffalo, and one Conrad Hammer was his foreman in charge, conducting the brewery. The plaintiff was in the employ of another person, engaged in storing ice on the defendant's premises. Hammer, the defendant's foreman, had some large 30-barrel casks that he desired to lower into the cellar, and, being short of help, called upon the plaintiff and his son to assist him in lowering the casks.

The machine by which the casks were hoisted and lowered stood in the cellar, dimly lighted by two windows and some gas-jets. It was an ordinary windlass, having a wrought-iron shaft, and was operated by means of two cranks or handles that fitted onto either end of the shaft. There were holes in the ends of the shaft through which pins could be put to keep the cranks or handles in position. The windlass had no brake, but Hammer went into the yard, and from a pile of lumber took a plank, put one end of it upon a barrel and a block, and, by lifting on the other end, pressed the same against the fly-wheel, making it serve the purpose of a brake. Hammer directed the plaintiff and another man to take hold of one of the cranks, and his son and another man to take hold of the other crank; he himself handling the plank. They wound up until the cask was raised from the floor, and over the hatchway of the cellar; then unwound, Hammer using the plank as a brake upon the wheel until the cask was lowered into the cellar. In this way two casks were lowered, and they were engaged in lowering the third, when Hammer gave directions to lower faster. Thereupon the crank or handle slipped off from one end of the shaft, and the cask went down with such rapidity that it threw the crank from the other end of the shaft. It struck against the stone floor, broke in two, and one part rebounded, striking the plaintiff's hand, and injuring it to such an extent that amputation subsequently was found necessary.

The appellant claims that the court erred in refusing to direct a verdict for the defendant; that the evidence failed to show negligence on the part of the defendant; and that the plaintiff was guilty of contributory negligence. We are, however, of the opinion that the evidence was of such a character as to make it a question for the determination of the jury. The evidence as to whether there were pins put in the ends of the shaft, so as to keep the handles in position, was conflicting. Hammer testified that he put in spigots, and then drove in 10-penny nails. The testimony of other witnesses, however, tends to show that at least on one end of the shaft, where the handle first flew off, there was no fastening. The room was but dimly lighted; the plaintiff was a stranger in the place, unfamiliar with the machine, and was placed at work upon the handle at the other end of the shaft; and we are hardly willing to say, as matter of law, that he was guilty of contributory negligence in not observing that the handles were not properly fastened, or that the brake was not a fit and proper one to use. As to the negligence of the defendant, it was his duty to supply suitable, proper, and safe apparatus, in proper repair, with which to do the work. The windlass used was the kind in ordinary use, and no question is made but that it was of proper construction, and reasonably safe, if it had a brake. But it appears that no brake was constructed upon the machine. A fly-wheel was put on for that purpose, but the necessary wood-work had never been attached. Hammer, the foreman, testified that it would not be safe to undertake to lower the casks without one. It further appears that the plank used on this occasion was frozen and frosty, and that in pressing it against the wheel it would not produce that amount of friction that was necessary to retard the movement of the windlass in handling so heavy a cask. The evidence further disclosed the fact that when the machine was originally constructed and put up for use it was furnished with wire pins, with which to hold the handles firmly in place, but that these pins had been lost. This evidence presented two questions for the determination of the jury: *First*, as to whether or not the defendant had exercised proper care and diligence in supplying a suitable and safe brake for the machine; and, *second*, whether or not he was guilty of negligence in not supplying other wire or wrought-iron pins with which to hold the handles in place after the loss of those that came with the machine. These questions were properly submitted to the jury by the trial court. The evidence is sufficient to sustain the verdict, and we must regard these questions as settled by it.

Upon the trial the defendant offered to prove by the plaintiff that he brought an action against Joseph Haberstro, the physician, and that by his verified complaint he charged that the cause of the loss of his arm was the malpractice of that physician. This evidence was objected to, and excluded by the court. It was, however, conceded by the defendant that Dr. Haberstro was at that time and still is a reputable physician to treat such cases. It is now contended that this evidence should have been admitted; that it would have established an election between inconsistent remedies; and the case of *Bootz* v. *Ferguson*, 10 N. Y. St. Rep. 761, is relied upon as an authority establishing this claim. In that case an action was brought to recover damages for the alleged conversion of a quantity of lumber and timber. The plaintiff had previously brought an action the complaint in which alleged full performance on the part of the plaintiff in the construction of a bridge, and that after the completion of the same it was duly accepted by the defendants, whereby they became indebted to him, etc. Issue was joined in that action, and resulted in a judgment in favor of the defendants. Before that action was brought the plaintiff knew that the bridge had been taken down, and the lumber and timber, for which he claimed in the latter action a conversion, had been drawn away. In that action it was held that he had an election of remedies either to proceed for conversion or upon contract; that one was inconsistent with the other; and, having elected to proceed upon the contract to judgment, he was bound thereby, and could not thereafter maintain the action for conversion. But no such question is presented in this case. Dr. Haberstro may or may not have been guilty of malpractice. That did not affect the question as to whether or not the plaintiff had been injured, or the mode or manner of such injury, or his right to recover therefor. The only bearing that the evidence could possibly have upon the case would be as to the amount of damages, and upon that question the evidence as to the treatment of Dr. Haberstro, and the result of such treatment, was given. Upon this question the court charged that if the plaintiff, when he received the injury to his hand, employed a physician or surgeon who was competent to treat an injury of that description, if he obeyed the instructions of the surgeon in the treatment of the wound fully and accurately, and was guilty of no negligence on his part in the treatment of it, but the wound progressed from causes beyond his control, and beyond the control of a competent surgeon, from bad to worse, until as a result the arm had to be amputated, then he is entitled to recover for the loss of his arm. The defendant excepted to this charge, and asked the court to leave it to the jury to say whether the loss of this man's arm was the natural and probable result of the injury that he received; and, if they find it was not the natural and probable result of the injury received, but that the intervention of germs or other intervening causes produced the loss of his arm, the only damage that could be given to him is the damages for the wound, and the pain suffered from it, and not for the loss of the arm. The court refused to so charge, to which the defendant's counsel excepted. As we have before stated, it was conceded that Dr. Haberstro was a reputable physician to treat such cases. He was the defendant's son, and, in the absence of evidence to the contrary, we must assume that he made use of the remedies and applied the treatment approved by his profession, and commonly used in such cases. The rule, as laid down by the trial court, is in accord with that prescribed in the case of *Lyons* v. *Railway Co.*, 57 N. Y. 489, and we see no reason to here question it.

Upon the trial Hammer was sworn as a witness for the defendant, and testified to having worked in a number of breweries, and then testified as to the manner in which he fixed the windlass before the accident; that he had always fixed it in that way, and had so fixed the machine in Jost's and Lang's breweries, when he worked in those places. Upon the cross-examination, he was asked what sort of a machine they had in Jost's brewery. This was ob-

jected to as immaterial, irrelevant, and improper, the objection was overruled, and exception taken. The witness answered that there was a fly-wheel, with a hoop or band around it; that by pushing down on the lever it would come in contact with almost the whole wheel, and that there was no trouble in stopping the machine. In other words, he described the brake that was upon the machine. We are inclined to the opinion that the evidence was proper, under the circumstances; he having been called upon to testify as to the manner in which he fixed Jost's machine before using it. And, again, while the defendant was not called upon to furnish the best or most approved machine in use, he was called upon to furnish a safe machine, of approved construction, in known use. The same witness was called upon to answer as to what he would say as to whether the handles attached in such a way could come off, in the hands of the men engaged in operating the machine, without carelessness on their part. This was objected to on the part of the plaintiff, and the evidence was excluded by the court, and we think properly. The jury were investigating a charge of carelessness on the part of the foreman. He was not a machinist. He may have been an expert in the brewing of beer, but the evidence fails to establish the fact that he was an expert in mechanical contrivances. The question as to whether the plaintiff was guilty of carelessness was one of the questions at issue, and depended upon numerous facts and circumstances, which must be taken into consideration by the jury in determining the question. The witness could not, even though an expert, take the place of the jury, and answer these questions, some of which must depend upon inferences to be drawn from established facts. An expert may describe the proper and approved mode of construction, and express his opinion as to the results that would be produced. He possibly, but we do not so decide, might be permitted to testify as to whether a 10-penny nail was of sufficient strength to hold a crank in position upon a windlass of this character, when a 30-barrel cask was to be lowered into the cellar; but to go further, and determine the question of the carelessness of those engaged in the operation of the machine, as an expert, is a proposition new to the law, and we apprehend without precedent.

No other questions are presented which require discussion here. The judgment should be affirmed. So ordered.

BARKER, P. J., and BRADLEY and DWIGHT, JJ., concur.