WILLIAM M. ALBERTI, Respondent *v.* NEW YORK, LAKE ERIE AND WESTERN RAILROAD COMPANY, Appellant.

In an action to recover damages for personal injuries alleged to have been caused by defendant's negligence, evidence as to the poverty of the plaintiff, *i. e.*, that he was dependent upon his earnings for his support, is incompetent, as bearing upon the question of damages, *Caldwell* v. *Murphy,* (11 N. Y. 416) questioned.

Inasmuch, however, as a person so injured is bound to act in good faith and to resort to such means as are reasonably within his reach to cure himself, where defendant has drawn out testimony to show that plaintiff had not had the best medical attendance, care and treatment, it is competent for the latter, for the purpose of showing that he resorted to such means as were reasonably within his reach, to prove the fact of his

poverty and dependance upon his earnings, and consequently his inability to procure the best medical attendance.

Upon the trial of such an action, the attorney for the plaintiff has authority to expressly waive, on his behalf, the statutory provision prohibiting a physician from disclosing the information acquired by him while attending upon his patient in his professional capacity. (Code Civ. Pro. §§ 834, 836.)

*It seems* that the calling of the physician as a witness by his patient, is of itself an express waiver of the seal of secrecy imposed by the statute.

*Strohm* v. *N. Y. L. E. & W. R. R. Co.*, (96 N. Y. 305) distinguished.

L., a medical witnesss called for plaintiff, was permitted to testify, under objection and exception, to his opinion as to the result of the disease in the natural and ordinary course, to-wit, that the plaintiff would never be any better and never be able to straighten his limbs. *Held*, no error.

The witness was then asked to state the length of time plaintiff might live in the natural and ordinary course of events. Upon objection the court decided that the witness might answer if he could speak with reasonable certainty. He replied he could only give the probability from the history of similar cases, and this he was permitted to do under objection and exception. *Held*, no error.

Upon the trial plaintiff's counsel offered in evidence a photograph of plaintiff, showing the manner in which his limbs had contracted, as a result of the accident, proving by a witness, that it was taken in his presence and correctly represented the condition of plaintiff's limbs. The photograph was received under objection and exception. *Held*, no error; that it was competent on the same principle as a map or diagram.

Reported below (43 Hun, 421).

(Argued November 27, 1889; decided December 17, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made February 15, 1887, which affirmed a judgment in favor of plaintiff, entered upon a verdict.

The nature of the action and the facts are sufficiently stated in the opinion.

*Servis E. Carr* for appellant. It was error to receive in evidence the deposition of the plaintiff and the testimony of his wife that the plaintiff had no other means of support for himself and wife than what he earned. (2 Sedg. on Dam. 552; *Morse* v. *S., etc., R. R. Co.*, 10 Barb. 621, 623, 624; *Ramson* v. *R. R. Co.*, 15 N. Y. 415; *Curtis* v. *R., etc., R. R. Co.*, 18 id. 534, 542; *Masterson* v. *Village of Mount*

*Vernon*, 58 id. 391, 395; *Leeds* v. *G. L. Co.*, 90 id. 26, 29; *Staat* v. *R. R. Co.*, 107 id. 625, 627; 1 S. & R. on Neg. 664, § 606; Wood on Railway Law, 1243; Thompson on Neg. 1263; Abb. Trial Evidence, 601; 2 Sedg. on Dam. [7th ed.], 545; *Moody* v. *Osgood*, 50 Barb. 628; *Myers* v. *Malcolm*, 6 Hill, 292; *Stockton* v. *Frey*, 4 Gill, 406; *Shaw* v. *R. R. Co.*, 8 Grey, 45; *M. etc., R. R. Co.* v. *Lyde*, 11 Am. & Eng. R. R. Cas. 188; *P. etc., R. R. Co.* v. *Roy*, 1 id., 225, 231, 232; 102 U. S., 451, 459, 460; *C. etc., R. R. Co.* v. *Boyfield*, 37 Mich. 205; *People* v. *Ganzales*, 35 N. Y. 49, 60; *Anderson* v. *R. R. Co.*, 54 id. 334, 341; *Baird* v. *Gillett*, 47 id. 186, 187; *Williame* v. *Fitch*, 18 id. 546; *Foote* v. *Beecher*, 7 Abb. N. C. 358, 361, 363; *Brague* v. *Lord*, 67 N. Y. 495, 499; *Havemeyer* v. *Havemeyer*, 11 J. & S. 506, 521, 522; *Coleman* v. *People*, 58 N. Y. 555, 562; *Paulilsch* v. *R. R. Co.* 102 id. 280.) There was error in the admission of the testimony of Dr Shepard, the plaintiff's attending physician. (*Edington* v. *L. Ins. Co.*, 66 N. Y. 185, 194, 195; *Dilleber* v *Ins. Co.*, 69 id. 256, 260; *Grattan* v. *Ins. Co.*, 80 id. 281, 297; *Westover* v. *Ins. Co.* 99 id. 56; *Renihan* v. *Dennin*, 103 id. 573; *People* v. *Murphy*, 101 id. 126; *In re Coleman*, 111 id. 220, 226; *Shaw* v. *Kidder*, 2 How. Pr. 243; *Gaillard* v. *Smart*, 6 Cow. 383, 388; *Barrett* v. *T. A. R. R. Co.*, 45 N. Y. 628, 635; *Mandeville* v. *Reynolds*, 68 id. 528, 540; *Bowne* v. *Hyde*, 6 Barb. 392, 394; *E. R. Bank* v. *Kennedy*, 9 Bosw. 543, 550; *Murray* v. *House*, 11 Johns. 464; *Ball* v. *Bank of Alabama*, 8 Ala. 590; 42 Am. Dec. 649, 653, 654; *In re Stocking*, 6 La. Ann. 232; *Shores* v. *Casswell*, 13 Metc. 413; 2 Greenl. on Ev. § 141; *Clark* v. *Randall*, 76 Am. Dec. 252, 256, 258; *Marks* v. *City of Buffalo*, 87 N. Y. 184.) There was error in the admission of opinion as to the future consequences of this injury. (*Strohm* v. *R. R. Co.*, 96 N. Y. 305; *Curtis* v. *R. R. Co.*, 18 id. 534, 542; *Lincoln* v. *S. R. R. Co.*, 23 Wend. 425; *Tozer* v. *R. R. Co.*, 105 N. Y. 617; *In re Eysaman*, 113 id. 62, 70, 71.) The receipt of the photograph offered by the plaintiff and objected to by the defendant was error. (*Cowley* v. *People*, 83 N. Y. 464; *Hynes* v. *McDermott*, 82 id. 41, 50;

*Ruloff Case*, 45 id. 213, 224; *Cozzens* v. *Higgins*, 1 Abb. Ct. App. Dec., 453; 3 Keyes, 206; *Bergmann* v. *Jones*, 94 N. Y. 51, 58; *Tooley* v. *Bacon*, 70 id. 34; *Daly* v. *Byrne*, 77 id. 182, 187, 188; *Fountain* v. *Pettee*, 38 id. 184, 185, 186; *Mulqueen* v. *Duffy*, 6 Hun, 299.)

*P. B. McLennan* for respondent. The defendant was guilty of negligence, which caused the plaintiff's injuries. (*Hegeman* v. *W. R. R. Co.*, 13 N. Y. 9; *Holbrook* v. *U. & S. R. R. Co.*, 12 id. 236; *Edgerton* v. *N. Y. & H. R. R. Co.*, 39 id. 229; *Seybolt* v. *N. Y., L. E. &. W. R. R. Co.*, 95 id. 568; *Colwell* v. *N. J. S. Co.*, 47 id. 291; *Curtis* v. *R. & S. R. R. Co.*, 18 id. 534; *Coddington* v. *B. C. R. R. Co.*, 102 id. 66, 69; *Hegeman* v. *W. R. R. Co.*, 13 id. 9; *Bowen* v. *N. Y. C. R. R. Co.*, 18 id. 410; *Deyo* v. *N. Y. C. R. R. Co.*, 34 id. 9; *Caldwell* v. *N. J. S. Co.*, 47 id. 282; *Maverick* v. *E. A. R. R. Co.*, 36 id. 378.) The verdict rendered by the jury was not excessive. (Baylies on N. T. & Appeals, 505; *Minnick* v. *City of Troy*, 19 Hun, 252; *Gale* v. *N. Y. C. & H. R. R. R. Co.*, 13 id. 3–5; *Walker* v. *E. R. Co*, 63 Barb. 200; *Shultz* v. *T. A. R. R. Co.*, 14 J. & S. 211, 89 N. Y. 242; *Rockwell* v. *T. A. R. R. Co.*, 64 Barb. 438; 53 N. Y. 594; *Gale* v. *N. Y. C. & H. R. R. R. Co.*, 13 Hun, 1; 76 N. Y. 694; *Harrold* v. *N. Y. El. R. R. Co.*, 24 Hun, 184; *Panzar* v. *T. F. M. Co.*, 16 N. Y. W'kly Dig. 241; *Ehrgott* v. *Mayor, etc.*, 96 N. Y. 271; *Groves* v. *City of Rochester*, 39 Hun, 5; *Dringham* v. *Stewart*, 41 id. 643; 111 N. Y. 188; 92 id. 219.) It is competent to show the earning capacity of the injured party. (*Ehrgott* v. *Mayor, etc.*, 96 N. Y. 264; *Leeds* v. *M. G. Co.*, 90 id. 26; *Lyons* v. *E. R. Co.*, 57 id. 490.) Any evidence which would legitimately tend to prove the extent or seriousness of plaintiff's injury, or to show what his actual condition was, was competent. (*Caldwell* v. *Murphy*, 11 N. Y. 416.) The privilege created by section 834 of the Code of Civil Procedure and by the provision of 2 R. S. 406, section 73 preceding it, may be waived by the patient, and the physician may be examined.

(*Johnson* v. *Johnson*, 14 Wend. 637; *Gallard* v. *Swart*, 7 Cow. 385; *Mark* v. *City of Buffalo*, 87 N. Y. 188; *Barrett* v. *G. A. R. R. Co.*, 45 id. 630; *Westover* v. *A. L. Ins. Co.*, 99 N. Y. 56.)   It was proper for the plaintiff to offer in evidence a photograph showing the condition of the plaintiff as he then was.   (*Cowley* v. *People*, 83 N. Y. 464; *Cousins* v. *Higgins*, 3 Keyes, 206; *Ruloff* v. *People*, 45 N. Y. 213; *Hone* v. *DePeyster*, 106 id. 589; *Strong* v. *N. Y., L. E. & W. R. R. Co.*, 96 id. 305, 306.

HAIGHT, J.   This action was brought to recover damages for a personal injury.

In July, 1885, the plaintiff was a passenger upon the defendant's express train, and was seated in one of the sleeping cars. When the train was near Oxford, in the county of Orange, it came into collision with a partially displaced door of a freight car, going in the opposite direction, which broke the windows and the partition between them at which the plaintiff was sitting.   He was struck by the broken pieces of glass and timber and so injured that the muscles of the legs contracted in such a way as to draw both legs up against his body and render him helpless.

No question is made but that there was sufficient evidence to take the case to the jury upon the main elements of the cause of action.   It is claimed however that errors were committed in the rejection and exclusion of evidence which entitles the defendant to a new trial.

The plaintiff and his wife gave testimony to the effect that he was dependent upon his earnings for the support of himself and wife.   This was given under the objection and exception of the defendant.   As bearing upon the question of damages we think this testimony was incompetent.   The rule of recovery is, compensation for the injuries sustained.   Pain and suffering, loss of time, the expense of medical, surgical and other attendance, and the diminished capacity to earn in the future are all proper elements to be taken into consideration by the jury in determining the amount of the compensa-

tion that should be awarded. But in this regard the law is not a respecter of persons. It makes no distinction between the rich or the poor, and a jury has no right to consider that element in determining the amount of the pecuniary compensation.

In the case of *Myers* v. *Malcolm*, (6 Hill, 292, 296), NELSON, Ch. J., in delivering the opinion of the court, says: " A new trial must be granted in this case for the error of the judge in admitting evidence of the wealth of one of the defendants. This was clearly inadmissible, and it is impossible to say what effect it may have had upon the verdict."

In the case of *Moody* v. *Osgood* (50 Barb. 628), BARNARD, P. J., says : " Damages in these cases are not to be estimated by or proportioned to the wealth of the defendant. Indirect proof of the wealth of the defendant is just as admissible as direct proof and for the same reasons."

To the same effect are the decisions of the Supreme Court of the United States, and the courts of other states. (*Pennsylvania Co.* v. *Roy*, 102 U. S. 451, 459; *Shaw* v. *A., & W. R. R. Co.*, 8 Gray, 45; *C. & N. R. Co.* v. *Bayfield*, 37 Mich. 205; *Stockton* v. *Fry*, 4 Gill, 406; 2 Thomp. on Neg. 1263; Abb. Tr. Ev. 601; Wood on Railway Law, 1242.)

It does not appear to us that this evidence was competent as bearing upon the earning capacity of the plaintiff prior to the injury. It is true that the jury heard the plaintiff's condition described and saw his wife in the court room, but there was no evidence before them showing the style or manner in which they lived or the amount that was annually expended in their support, and this could not very well be determined by the jury by a mere inspection of the plaintiff's wife in the court room. The plaintiff had already stated the character and nature of his business before his injury, and subsequently stated the amount of salary that he received. His earning capacity was thus fully made to appear by direct and competent evidence. Nor are we inclined to sustain the admissibility of this testimony, upon the theory that it was competent as tending to prove that the plaintiff after the accident was unable to perform any labor. There was but little dispute in

reference to his actual condition.   It was made to appear from
the testimony of eye witnesses and expert physicians who had
examined and satisfied themselves as to his condition.   We
are aware that in the case of *Caldwell* v. *Murphy* (11 N. Y. 416),
the court there sustained this character of testimony upon the
theory that having a family dependent upon him for support
and being without means of support, except his labor and the
charity of his friends, his omission to employ himself had a
bearing upon the extent to which he had been disabled.   But
we regard that case as carrying the rule to the outside limit,
and do not feel justified in following it in this case.   We are
thus brought to the inquiry as to whether this evidence was
competent for the purpose of showing that the plaintiff used
ordinary care to cure and restore himself; that he acted in
good faith, and resorted to such means as were reasonably
within his reach to make his damages as small as possible.   It
doubtless would be in case any such issue was tendered by the
pleadings or raised by the testimony.   A person who receives
an injury through the carelessness of another, is bound to act
in good faith and to resort to such means and adopt such
methods as are reasonably within his reach to cure and restore
himself.   (*Lyons* v. *E. R. Co.*, 57 N. Y. 489.)

The answer denied any knowledge or information sufficient
to form a belief as to the extent and seriousness of the injury
complained of.   The first witness sworn upon the trial on
behalf of the plaintiff was Jonathan Allen, the plaintiff's
father-in-law, at whose residence he had been since the injury.
He testified as to the condition of the plaintiff upon his arrival
and on down to the time of the trial, and gave the names of
the doctors that had treated him.   Upon the cross-examination
he was asked if the plaintiff at any time since the injury had
been under the charge of any physician especially skilled in
this class of cases, and he answered that he had not any more
than those he had mentioned, and it appeared that they were
ordinary practioners in the country villages of Andover and
Alfred.   It was after this testimony was given that the evi-
dence objected to was called out.   We do not understand for

what purpose the defendant called for this testimony unless it was his purpose to show that the plaintiff had not had proper care and treatment. The physicians who testified on behalf of the plaintiff were cross-examined by the defendant's counsel and made to admit that they had never seen a case of this kind before, and consequently had no experience in treating such a case. It further appeared that there was an eminent physician in New York, by the name of Dr. Seguin, who was skilled in the treatment of diseases of this character. It was undoubtedly proper for the defendant to cross-examine the plaintiff's physicians as to their skill and experience in treating diseases of this character, as bearing upon the weight which should be given by the jury to the opinions expressed by them in reference to the durability of the disease, and that that evidence did not necessarily tender the issue as to whether the plaintiff had made use of the means reasonably within his reach to cure himself. But no such claim can be made as to the testimony called out from the witness Allen. He was not a physician and had not been called upon to express any opinion as an expert. The defendant had previously shown by the testimony of this witness that Dr. Seguin was especially skilled in that class of cases, and that he had not been called to treat the plaintiff, thus giving point and character to the testimony that the plaintiff had not been treated by any one especially skilled in such cases. It appears to us that this evidence was sufficient to raise such an issue and that the trial court was justified in admitting evidence that would tend to rebut and disprove such claim and that this was done by showing that he was poor and dependent upon his earnings, and was consequently not able to employ or pay a skilled physician to visit him from the city of New York. Upon this theory we are of the opinion that the evidence objected to was permissible.

Dr. Shepard was called as a witness for the plaintiff and asked to describe to the jury the condition in which he found the plaintiff on the morning after the accident, and what his condition had been from that time until the present. This

was objected to upon the ground that the question comes within the prohibition of the Code as a question of privilege. The counsel for the plaintiff conducting the trial then stated that as his attorney he waived the privilege. The objection was then overruled and an exception was taken by the defendant, and the doctor proceeded to state the condition of the plaintiff.

The Code of Civil Procedure provides that a clergyman or, other minister of any religion, shall not be allowed to disclose a confession made to him, in his professional character, in the course of discipline, enjoined by the rules or practice of the religious body to which he belongs. (§ 833.) And that a person, duly authorized to practice physic or surgery, shall not be allowed to disclose any information which he acquired in attending a patient, in professional capacity, and which was necessary to enable him to act in that capacity. (§ 834.) And that an attorney or counselor at law shall not be allowed to disclose a communication, made by his client to him, or his advice thereon, in the course of his professional employment. (§ 835.) Section 836 then provides : " The last three sections apply to every examination of a person as a witness, unless the provisions thereof are expressly waived by the person confessing, the patient or client." So that under the provisions of the latter section there must be an express waiver by the patient in order to make the testimony competent. The question then is, can such express waiver be made by an attorney of a person in his lifetime. The death of the client would undoubtedly terminate such agency and no one would then be permitted to speak for him, and the prohibition provided for by the Code would then doubtless continue forever. (*Westover* v. *Ætna Life Insurance Co.*, 99 N. Y. 56.)

But although dead he may leave behind him evidence which indicates an express intention to waive the privilege ; as for instance, where he requests his attorney to sign the attestation clause of his will, he by so doing expressly waives the provisions of the statutes and makes him a competent witness to testify as to the circumstances attending its execution, including

the mental condition of the testator at the time. (*In the Matter of Coleman*, 111 N. Y. 220.)

RUGER, Ch. J., in delivering the opinion of the court in that case, says : "It cannot be doubted that if a client in his lifetime should call his attorney as a witness in a legal proceeding to testify to transactions taking place between himself and his attorney while occupying the relation of attorney and client, such act would be held to constitute an express waiver of the seal of secrecy imposed by the statute, and, can it be any less so when the client has left written or oral evidence of his desire that his attorney should testify to facts learned through his professional relations upon a judicial proceeding to take place after his death ? We think not." If the calling of an attorney as a witness in behalf of his client is an express waiver of the seal of secrecy imposed by the statute, is not also the calling of a physician as a witness by his patient such a waiver ? It is true that these remarks of the chief judge may not have been necessary in the decision of that case and may have been made by way of illustration, still the force of the argument is such as to commend itself to us as a correct and just interpretation of the statute. As we have seen, the physician was not only called as a witness on behalf of the patient, but his counsel who was conducting the trial in his behalf in open court expressly waived the prohibition of the statute. The attorney in conducting the trial stood in the place and stead of his client, representing him as his duly authorized agent. All that properly related to the conduct of the trial devolved upon the attorney. It was for him to determine what should or should not be presented as evidence, and it appears to us that he must be deemed to so far represent the client as to be authorized in his behalf to waive the privilege and remove the seal of secrecy to the evidence that he in his judgment saw fit to offer for and on behalf of his client. The power of an attorney to represent his client was considered in the case of *Mark* v. *City of Buffalo* (87 N. Y. 184). In that case the attorneys of the parties had agreed upon the amount that should be paid to the referees before whom the

case was tried.  The Code fixed the fees of referees at six dollars for each day spent in the business of the reference, unless at or before the commencement of the trial a different rate of compensation is fixed by the consent of the parties.  The parties had not agreed upon a greater rate than that provided for by the statute, but their attorneys had, and it was held that under their employment they had the power to so agree and that their clients were bound by their agreement.

Dr. Lewis, another witness sworn on behalf of the plaintiff, was asked to state what in his opinion will be the result of the disease in the natural and ordinary course.  This was objected to on the ground that there was too much speculation connected with it.  The objection was overruled and an exception taken, and the witness gave it as his opinion that the patient would never be any better, and that he never would be able to straighten his limbs.  He was then asked to state the length of time that the plaintiff may live in the natural and ordinary course of events.  This was objected to and the court ruled that he might answer if he could speak with reasonable certainty in reference thereto.  The doctor answered that he could only give the probability from the history of other similar cases, and this he was permitted to do under the objection and exception of the defendant.  It will be observed that as to the latter answer, the answer was as to the probability, and that in the former question he was called upon to express his opinion in reference to the result of the disease in the *natural and ordinary course*.  It is claimed that this evidence is objectionable under the case of *Strohm* v. *New York, Lake Erie and Western Railroad Co.*, (96 N. Y. 305.)  In that case the question was as to what might or may develop, and was not as to what would probably or was reasonably certain to develop.  This question was considered in the case of *Griswold* v. *New York Central and Hudson River Railroad Co.* (44 Hun, 236; 115 N. Y. 61), and was again considered by us in the case of *McClain* v. *Brooklyn City Railroad Co.* (116 N.Y. 459), and under the rule as laid down in these cases we consider the evidence competent.

During the trial, the plaintiffs counsel offered in evidence a photograph of the plaintiff showing the manner in which his limbs were contracted. This was permitted by the court under the objection of the defendant. Before it was done, however, one of the doctors testified that the photograph was taken in his presence and that it correctly represented the condition of the limbs. The only materiality of this evidence was to show the manner in which the limbs of the plaintiff were contracted. In this regard, the testimony of the physician is that it was a correct representation of them. This made it competent as a map or diagram. (*Archer* v. *New York, New Haven & Hartford Railroad Co.*, 106 N. Y. 589–603; *Wilcox* v. *Wilcox*, 46 Hun, 32–38; *Ruloff* v. *People*, 45 N. Y. 213–224; *Hynes* v. *McDermott*, 82 N. Y. 50.)

The judgment should be affirmed with costs.

FOLLETT, CH. J. (dissenting). This action is for the recovery of damages for a personal injury caused by the negligence of the defendant. On the trial the plaintiff was permitted to prove, against the objection and exception of the defendant that he depended on his earnings for the support of himself and wife. That he had no other means, and that since December 7 1885, his wife had been working what she could for the support of both. It is held in the prevailing opinion that this evidence was not admissible generally, nor on the question of damages which is well sustained by the authorities cited, and others might be added.

It is sought to sustain in this court the reception of the testimony on the ground (we use the language of the respondent's counsel) " that it was competent for the purpose of showing that the plaintiff used ordinary care to cure and restore himself; that he acted in good faith and resorted to such means as were reasonably within his reach to make his damages as small as he could."

The rule here stated was laid down in *Lyons* v. *Erie R. Co.* (57 N. Y. 490), in this language: " When one receives an injury through the carelessness of another, he is bound to use

ordinary care to cure and and restore himself. He cannot recklessly enhance his injury and charge it to another. If his arm be broken, he cannot omit to have it set and charge the loss of the arm to the wrong-doer. He is not obliged to employ the most skillful surgeon that can be found or resort to the greatest expense to ward off the consequence of an injury which another has inflicted upon him. He is bound to act in good faith and to resort to such means and adopt such methods reasonably within his reach as will make his damage as small as he can." The rule was reaffirmed in *Sauter* v. *N. Y. C. & H. R. R. R . Co.* (66 N. Y. 50), and must be regarded as a settled rule of law in this state. At this point it is important to inquire whether an issue, that the plaintiff had not used ordinary care to cure himself, had acted in bad faith and had failed to resort to such means as were reasonably within his reach, was raised on the trial. It is not alleged in the answer that the plaintiff was negligent in respect to the means used to affect his cure or that his attendants, professional or lay, were incompetent or negligent, and such an issue is not alluded to in the charge, nor do we find any trace of it in the evidence, unless it is contained in that quoted by the respondent's counsel for the purpose of sustaining this ruling, all of which we will now quote.

The first witness sworn in behalf of the plaintiff was his father-in-law, Jonathan Allen, who on his cross-examination testified: " Alfred Center is a place of from 800 to 1,000 inhabitants. Dr. Shepard is one of the practicing physicians in that place. The country about there is quite thickly settled for a farming country, farms averaging about a hundred acres to the farm. Dr. Shepard's practice is confined to that locality.

" Q. Some time after this injury, did you make any arrangement for Dr. Seguin to visit Mr. Alberti and examine him ? A. We did ; yes, sir.

" Q. And about when was that? A. Mrs. Alberti can explain that better than I can, for she made the arrangement. I think it was the last of November or first of December, some time along then.

"Q. Did you have anything to do with making that arrange-ment? A. I did; I requested Dr. Hubbard of Hornellsville, who was one of the consulting physicians, with the advice of others, to send for Dr. Seguin.

"Q. Did you do that because you understood Dr. Seguin was skilled in that class of cases? A. We did; yes, sir.

"Q. And was that arrangement made for an examination with a view of having him treat Mr. Alberti? A. Yes, sir; and as I understand it the day was set for him to come up, but Mr. Alberti got so bad he thought he could not stand the examination, and I requested Dr. Hubbard to telegraph to Dr. Seguin to wait further orders, and he did not go then at all until quite recently. Dr. Shepard has been the attending physician. Dr. Crandall has been one of the consulting physicians. He has practiced at Andover. It is eight miles south of Alfred, on the Erie road. It is a place of about 1,000 inhabitants, it may be more, 1,200. Dr. Hubbard we have called once and Dr. Robinson once. Those were single visits. The treatment has been under the direction of Dr. Shepard.

"Q. Now, has Mr. Alberti at any time since this injury been under the charge of any one who was especially skilled in this class of cases? A. Well, no more so than these men I have mentioned.

"Q. Than such men in that ordinary practice would be? A. Yes, sir; I don't know what their skill is."

The plaintiff was not present at the trial, but his deposition taken March 26, 1886, pursuant to sections 872 and 873 of the Code of Civil Procedure was read in his behalf at the trial which occurred April 26, 1886. Among other state-ments the deposition contained the following: "I depend on my earnings for the support of myself and wife." The defendant objected to the reading of the sentence quoted "as incompetent and improper," but the objection was overruled, an exception taken and the sentence was then read. (Fol. 101.)

The plaintiff's wife was sworn in his behalf (being the sixth witness) and was asked: "Q. Has Alberti any other means of

support than what he earns ? " This was objected to by the defendant " as incompetent and improper," but the objection was overruled, an exception taken and this answer given : "A. No, sir ; he has not. Since the seventh of December I have been working what I could to support myself and him." (Fol. 247.) Dr. Mark Shepard, plaintiff's attending physician, was sworn in his behalf and testified, among other things, to his belief that the plaintiff was incurable. Upon cross-examination he testified :

"Q. What you are giving here is simply your opinion, is it not, in answer to these last questions ? A. To these last questions, my opinion, yes, sir.

" Q. And that opinion is based upon your experience since you have been practicing, in part, is it not? A. Well, in a very small part, yes.

" Q. In part it is based upon what you had learned in regard to the human system and the various diseases before you commenced to practice ? A. In part, yes.

" Q. Is it based upon anything except those two ? A. Yes, sir. I commenced practicing in the spring of 1878. I graduated at the University of the City of New York, in the spring of 1878. I immediately commenced my practice at Alfred and Alfred Center. I attended this university two winter courses. During the time I have been practicing there I have not had under my charge another case like this. This is the first case of this kind that has come under my medical observation. When I came to see Mr. Alberti on the morning of the twenty-fifth of July, the examination revealed to me something I had not observed before in my medical experience.

" Q. And it has in its various stages — I mean this case — developed those things which you had never observed or known of in your medical experience before ? A. Yes, sir.

" Q. Then, in your treatment of this case, there was nothing in your medical experience which guided you, was there ? A. Yes, sir ; there was. My general knowledge of the treatment necessary with troubles with the spinal cord, congestion and meningitis.

"Q. Did you ever have a case of meningitis? A. O, yes, lots of them."

Dr. Wm. M. Crandall, the physician who had been called in consultation with Dr. Shepard, was sworn in behalf of the plaintiff, and testified, that in his opinion it was very doubtful whether the plaintiff could ever recover. Upon cross-examination he testified: "I practice medicine at Andover, N. Y. This is seven miles from Alfred. Andover is a place of not over a thousand inhabitants. There is a country district around there. My practice has been confined mostly to that locality. I have not had occasion in my medical experience to treat a case like this. Because no two cases are exactly alike. Have had occasion to treat cases of meningitis, cerebro-spinal meningitis, I believe this to be a case of meningitis, that is my opinion in regard to it. I have seen others besides myself treat cases of meningitis. Have advised them with reference to them. Dr. Lewis, who was sworn here as a witness yesterday, Dr. Baker, Dr. Harmon — well, I don't know, I should be bothered, may be, to think of them all. They are physicians in the locality in which I live I don't think any of them ever made diseases of that kind a specialty.

"Q. Then have you ever seen the treatment of a case of this kind or of this class by some physician who made a speciality of diseases of that character? A. No, sir; I don't know as I can say I have."

Smith Ely, a physical residing at Newburgh, made an examination of the plaintiff April 1st or 2d, 1885 in connection with Drs. Lewis, Crandall and Shepard, and was sworn as a witness in behalf of the plaintiff. He testified on cross-examination: "I don't say that it is impossible that he should recover. I don't think there is any doubt but that there was no lesion of the cord. There is some doubt whether the membranes were actually inflamed. I think the symptoms point to that.

"Q. Who is the best qualified to express an opinion on that subject, the ones who have made it a special study for life? A. Yes, I should think they would.

"Q. Is Dr. Seguin recognized as a standard authority on matters of that kind in this country? A. Yes, he is.

"Q. And you think he would be well qualified to express an opinion on those matters? A. Yes, of course.

"Q. You have heard the testimony here in regard to Alfred Center and you saw the place there yourself. Isn't it a fact that in ordinary country practice in a case of this character which required special treatment, the ordinary method is to put him under the hands or charge of some one who has special knowledge in that direction?"

Objected to by the plaintiff as incompetent and immaterial. The objection was sustained and the defendant excepted. It is possible to infer that this question was asked with reference to raising the issue that the plaintiff had been negligent in not employing a physician having special skill and experience in the treatment of injuries like the plaintiff's, but this question was excluded by the court. We have now quoted all the evidence referred to by the respondent's counsel for the purpose of sustaining this ruling, and we think it very clearly shows that no such issue as is now sought to be introduced into the case was presented on the trial. All of this evidence was given before the plaintiff rested. The defendant called four physicians: Doctors Seguin, Stillman, Robinson and Nye. The first three acquired their knowledge of the plaintiff's condition by being called in consultation by him, and Dr. Nye gave no evidence of consequence.

But two issues were contested at the trial: (1) Were the plaintiff's injuries caused by the actionable negligence of the defendant; (2) the extent of the injuries sustained and the probable duration of the consequences. To this second issue all of the medical testimony was directed and none of it tends to show that the plaintiff was negligent in the means adopted for his cure or that such a position was taken by the defendant at the trial, and it seems to us plain that this so-called issue has been raised out of the record for the purpose of avoiding the effect of the ruling discussed.

The judgment should be reversed, and a new trial granted, with. costs to abide the event.

All concur with Haight, J., except Follett, Ch. J., and Potter, J., dissenting, and Brown, J., not sitting.

Judgment affirmed.