### FOELS v. TOWN OF TONAWANDA.

#### (Supreme Court, General Term, Fifth Department. April 16, 1891.)

DAMAGES FOR PERSONAL INJURIES—ERROR IN MEDICAL TREATMENT.

From an accident caused by defendant's negligence plaintiff sprained her ankle, which developed into a chronic inflammation of the ankle joint. In an action for the injury she testified that a physician advised her to take exercise upon her feet, but this was denied by the physician. There was expert medical testimony that such exercise was injurious, but that the injury was obscure, giving no outward manifestations of its presence; and it appeared probable that plaintiff, for other reasons, was advised to take exercise, and that she acted in good faith. *Held*, that it was not essential to a recovery by plaintiff that she should by evidence discriminate between the actual injuries and the natural consequences thereof and the injuries with their consequences resulting from the use of the foot after the accident. So long as she acted in good faith, defendant could not complain of her mistake of judgment, or be relieved from liability because of the difficulty or impossibility of separating the compensation to be awarded for its wrong from the aggravations thereof accompanying an honest but mistaken treatment.

Appeal from circuit court, Erie county.

Action by Sophia Foels against the town of Tonawanda for personal injuries to plaintiff, alleged to have been caused by negligence on the part of defendant. At the trial the jury found a verdict for plaintiff for $4,500. Plaintiff appeals from an order setting aside the verdict as excessive.

Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ.

W. B. Simson, (Daniel N. Lockwood, of counsel,) for appellant. John K. Patten and C. H. Sickson, for respondent.

MACOMBER, J. The plaintiff received personal injuries by stepping through a bridge maintained by the defendant across Tonawanda creek in the village of Tonawanda, on the 6th day of August, 1888. The action was tried at the Erie circuit, and resulted in a verdict in favor of the plaintiff of $4,500, which the learned justice presiding at the trial has set aside as excessive. The plaintiff was married in June, 1888, and at the time of receiving the injury was 23 years of age. A defect in the bridge—being the absence of a plank in the walk designed for pedestrians—caused the injuries complained of. While passing along exercising the usual care of persons of ordinary prudence under like circumstances, her foot and leg went through this hole down to a beam underneath, resulting in a very serious sprain of the ankle. The accident developed into a chronic inflammation of the synovial membrane or lining of the ankle joint, called *synovitis*. Shortly after the injury a physician was summoned, who prescribed for the injury, and, as the plaintiff testified, advised her to move about, and take exercise upon her feet. The fact, however, that such advice was given, was denied by this physician. The expert medical evidence establishes the fact that exercise upon the foot, under the circumstances, was injurious to the patient, and greatly retarded recovery, even if the same did not aggravate the nature of the injury. It is very doubtful, however, if the amount of exercise which the plaintiff took upon her feet after this injury contributed in any material part to the serious nature of the trouble which existed up to the time of the trial, and which, under the evidence, is likely to follow her through life. The learned trial judge instructed the jury very fully upon this branch of the case. He told them that any aggravation of the injury by walking upon the foot or by not giving to it that degree of care and attention which persons ordinarily do under the same circumstances, could not be charged against the defendant, and that

all the defendant was bound to pay, if anything, was for the injury which immediately resulted from the accident itself, and that no recovery could be had for an improper use of the foot and ankle from time to time, if such use in any manner prevented its restoration, or increased or aggravated the extent of the injury itself. These were instructions which the defendant certainly could not complain of. They were probably quite as favorable to the defense as could be demanded in its behalf. They, for aught that appears from the record, were closely observed by the jury. The learned justice, in granting a motion for a new trial, has, it seems to us, fallen into an error. He says in his opinion: "Neither party upon the trial gave evidence to prove what would be the probable extent or duration of such an injury with proper treatment of it on the part of the person receiving it. The jury were, therefore, left without substantial facts from which they could determine the probable duration or result of this injury; and in considering the case there is reason to believe from the amount of their verdict that they failed to discriminate, as they should be expected to do, between the injury really resulting from the sprain of the ankle, and that received by the plaintiff by her subsequent use of it. Its condition, as it finally became, was shown to have been probably incurable. But whether that would result from the mere injury itself or only from that injury, combined with an improper use of the ankle, was not stated by the witnesses. It is reasonable, however, to infer that the physicians did not intend to testify that the injury itself would have been permanent if this use of the ankle had not been made by the plaintiff." In our judgment there is nothing in the case which called upon the plaintiff to give evidence of the character indicated by this portion of the opinion of the learned justice, by which an attempt should be made, by means of expert testimony, to discriminate between the actual injuries and the natural consequences thereof on the one hand, and such injuries and the consequences resulting from the use which the plaintiff actually made of her foot and ankle after receiving such injuries. It would probably be impossible, even in the realm of expert testimony, for a physician accurately to describe and apportion that part of the condition of the ankle which resulted necessarily from the injury, and that part of it which followed its injudicious use. The case contains no promise of the production of such evidence upon another trial.

No question of veracity between the plaintiff and the physician who was first called in her case can be of any moment in the consideration of the questions here involved. Under the uniform testimony of the physicians, it would seem to be the universal opinion of men skilled in the art that the best mode of treatment of any injury of this description would be absolute rest. This certainly would be the case if the nature and extent of the injury had been accurately known or discernible by any inspection which might have been made of the ankle. But, as one of the doctors testified, it was a blind and obscure injury, giving no outward manifestations of its character, and hence difficult of treatment. The plaintiff has evidently given her testimony as to her medical advice in perfect good faith. She may be, and probably is, mistaken in the full scope and meaning of the advice so given. The fact, however, that she was advised to take exercise at this time was undoubtedly true; for it was natural, under the circumstances, that she should be so advised, as she was pregnant, a child being born unto her March 15, 1889. We cannot, therefore, accede to the proposition made by the learned counsel for the defendant, that there rested upon the plaintiff the absolute necessity of not using her ankle until such times as the same should be fully restored; nor that the defendant is in any position to claim that the bare possibility of such improper use of the ankle should redound to its benefit. There is no principle of law which supports such contention, where the good faith of the party is not, but his ignorance alone, is impugned. The duty rested upon the plaintiff to take

proper care of the injured ankle, and not wantonly, carelessly, or needlessly to do any act which would aggravate the injuries to it. Her duty towards that member, however, was not so great and exclusive as to require her, in the absence of competent and positive medical instructions, to ignore and openly disregard the welfare of the rest of her members and of her whole body. So long as she acted in good faith, and according to such lights as she had, the defendant, the party guilty of the wrong, cannot be permitted to complain of her mistake of judgment in the treatment of her ankle; nor successfully to claim that no liability should attach to itself because the amount of compensation which should be awarded against it for its wrong is difficult or impossible of separation from the aggravations thereof accompanying an honest but mistaken treatment. *Hickinbottom* v. *Railroad Co.*, 15 N. Y. St. Rep. 15. The negligence of the defendant was the proximate cause of the injury to the plaintiff, and it is liable for the actual damages which naturally followed thereon, where the party injured acted, in respect to the treatment, in good faith, and without a conscious disregard of consequences. *Lyons* v. *Railway Co.*, 57 N. Y. 489; *Sauter* v. *Railroad Co.*, 66 N. Y. 50; *Radman* v. *Haberstro*, 1 N. Y. Supp. 561. While, therefore, recognizing the power and duty of the court to grant a new trial for excessive damages, as was held in *Houghkirk* v. *President*, etc., 92 N. Y. 219, we think that the jury in this instance was guided by correct rules of law in the charge of the court, was guilty of no passion, prejudice, or other unworthy motive in rendering its verdict, and that its conclusion was justified by the evidence. It follows, therefore, that the order appealed from should be reversed, with costs, and judgment ordered for the plaintiff upon the verdict. All concur.