# ELLIOTT, Plaintiff in Error, v. KANSAS CITY.

### Division Two, May 19, 1903.

1. **Negligence:** MEDICAL TREATMENT: AUGMENTED INJURY. A person injured by the negligence of another is bound to use ordinary care for his restoration and cure, but is not responsible for the mistakes of an attending physician. If he acts in good faith under his direction, any mistake of the physician in treating him will not absolve the party whose negligence caused the injury from liability in damages therefor.

2. ———: ———: ———: INSTRUCTIONS. Plaintiff while walking along a sidewalk stepped into a hole where a board was broken and received injuries to her spine. There was evidence tending to show that she had previously greatly suffered from womb trouble which had its origin in the premature birth of a child, and two or three years after that the inflammation was so great that her physician could not examine the womb. After the accident, which occurred about five years afterwards, she was treated several months by a physician of twenty years' practice, who ceased his visits when he believed he could do nothing more for her and that all she needed was rest. She then called in another physician, who finding her womb retroverted with adhesions, broke the adhesions with his finger and placed the womb in proper position. There was no evidence tending to show that this physician was not a reputable one; he was a graduate of a college and had been practicing for thirty years. Nevertheless, the plaintiff did not recover, but continued to suffer pains in her back, had not been able to sit up longer than a half hour at any time before the trial since the accident, and one leg was smaller and drawn up and still continued to do so. Other physicians testified that the breaking of the adhesions with the finger was improper practice and an aggravating circumstance. *Held,* that the plaintiff is not responsible for the alleged unskillful treatment of this physician, especially in the absence of any showing that he was not a reputable physician, and the court erred in instructing the jury that plaintiff could not recover for that part of her injuries or condition entirely due to a lack of medical treatment, or to improper medical treatment. *Held,* also, that this instruction does not refer to plaintiff's condition or injuries prior to the accident. *Held,* also, that the law is that if plaintiff used ordinary care in the selection of a physician she is entitled to recover for injuries augmented by his improper medical treatment.

Error to Jackson Circuit Court.—*Hon. James H. Slover,* Judge.

REVERSED AND REMANDED.

*L. A. Laughlin* for plaintiff in error.

The court erred in giving instruction 7 for defendant. It makes plaintiff responsible for the alleged unskillful treatment of Dr. Drake, without regard to the question of whether plaintiff used ordinary care in his employment; besides, there is not a scintilla of evidence in the record that he was not a reputable physician, as he was the graduate of a medical college and had been practicing for thirty years. It also makes the plaintiff responsible for lack of medical treatment. This could only apply to the time plaintiff did not have medical attention, from Christmas, after Dr. Morrow ceased to attend her, until July, when Dr. Drake began attending her, though Dr. Morrow testified he had done all he could for her. The question raised by this instruction has not been decided in Missouri, but the authorities are uniform in other States where the question has been raised that the negligence of the defendant having caused the injury which requires the service of a physician, if the plaintiff used ordinary care in the selection of a physician, plaintiff is not responsible for the errors and mistakes of the physician, but, on the contrary, the defendant is. Stover v. Inhabitants of Bluehill, 51 Me. 440; Pullman Pal. Car Co. v. Blum, 109 Ill. 20; City of Sandwich v. Dolan, 34 Ill. App. 199; Loeser v. Humphrey, 41 Oh. St. 380; Reed v. Detroit, 108 Mich. 224.

*R. B. Middlebrook, H. S. Hadley* and *R. J. Ingraham* for defendant in error.

(1)    Instruction 7, given for the defendant, must not be considered by the court as an abstract declaration of law, but should be considered in reference to the peculiar facts in the case, as shown by the evidence, and also with reference to the other instructions given for plaintiff and for defendant. As the verdict in this case was for plaintiff, it must be presumed that the jury found all the facts in her favor. There is no question but that the courts of a number of States have held that if an injured plaintiff in a suit for damages exercises ordinary care in the selection of a physician for the treatment of his injuries, he can recover for all the past and future suffering, and all permanent disability that has resulted from said injuries, and the fact that the physician employed might have secured better results, or the fact that he did not exercise ordinary care in the treatment of the injuries, and thus aggravated them, will be no defense on the part of the defendant. This, however, has never been declared to be the law in this State. It has also been held in many jurisdictions, as well as this State, that if a person is suffering from some disease, or previous injury, and meets with an accident through the negligence of another, he can recover for the aggravated condition of the old injury or disease, as it is held that sidewalks and railroads are open to the use of persons not in good health, as well as those who are healthy. Brown v. Railroad, 66 Mo. 588. But it is the law in this State, and in all other jurisdictions, that a person suffering from disease or previous injury, who meets with another accident, is not entitled to recover for such conditions as are entirely due to his previous injury or disease. This was all that instruction 7 told the jury. The two cases are parallel. An injured plaintiff is entitled to recover for a diseased condition aggravated by another injury, and also entitled to recover for an injured condition aggravated by improper medical treatment; but in neither instance is an in-

jured party entitled to recover for a condition entirely
due to previous disease, or entirely due to lack of
medical treatment. For, if entirely due to previous
disease or entirely due to lack of medical treatment, or
improper medical treatment, it could not be an aggra-
vation of a diseased condition resulting from an in-
jury. (2) Instructions are to be read together as a
whole, and, when consistent, their meaning is to be
collected from the whole context, and not from de-
tached instructions or phrases in them; and if, when
so treated, their meaning is obvious, the legal prin-
ciples announced in their entirety correct and appli-
cable to the case, they are safe guides for a jury, even
though subject to verbal criticism. And where a se-
ries of instructions, taken together, contain a com-
plete exposition of the law and covers every phase of
the case, the verdict will be sustained, though the in-
structions, when taken separately, may be incomplete,
and each is not qualified by an express reference to
the other. Owens v. Railroad, 95 Mo. 169; Shaw v.
Dairy Co., 56 Mo. App. 521; Hughes v. Railroad, 127
Mo. 447; Reilly v. Railroad, 94 Mo. 600; State v.
Matthews, 98 Mo. 125; Harrington v. Sedalia, 98 Mo.
583; Wetzel v. Wagner, 41 Mo. App. 509; Ridenour v.
Railroad, 102 Mo. 270; Shortel v. St. Joseph, 104 Mo.
114; Dickson v. Railroad, 104 Mo. 491; O'Connell v.
Railroad, 106 Mo. 482; State v. Noeninger, 108 Mo.
166.

BURGESS, J.—This is an action for $10,000 dam-
ages by plaintiff against the defendant city for per-
sonal injuries alleged to have been sustained by her
by reason of stepping into a hole in one of the side-
walks in said city. The defenses were general denial,
and contributory negligence.

The trial resulted in a verdict and judgment for
plaintiff in the sum of five hundred dollars. She

brings the case to this court by writ of error for review.

The salient facts are about as follows. At the time of the accident plaintiff was about twenty-eight years of age, married and living with her husband in Kansas City, Missouri. On the 27th day of August, 1898, while she was walking north on the plank walk on the east side of Central street in said city, at a point twenty or twenty-five feet north of Nineteenth street, she stepped with her right foot in a hole in the sidewalk caused by a part of the plank being missing. The weeds had grown up through the hole obscuring it. Her right leg went down into the hole as far as the knee, skinning it, and injuring the lower end of her spine. While enroute home upon a street car she commenced to suffer from severe pains in her back so that when she arrived at the point where she had to leave the car she had great difficulty in walking to her home, about two blocks away. That night she suffered very much. Dr. Morrow was called the next day, and attended her up to the following Christmas, but was unable to relieve her. In July, 1899, Dr. Drake was called in, and found her womb retroverted with adhesions. He broke the adhesions with his finger and placed the womb in proper position.

At the time of the trial of this case on December 1, 1899, plaintiff testified that she had only been able to sit up a few minutes at a time, not over half an hour at any time since she was hurt, that she could not sit up any longer on account of severe pains in her back; that she had not been free from pain since she was hurt; that her right leg is smaller than the other and is drawn up and is still continuing to do so. It is claimed by counsel for plaintiff, that prior to the accident, she was a strong healthy woman, did all her housework and assisted her husband in building their house by handing up lumber to him. There was evidence tending to show that she became an invalid

and a great sufferer from womb trouble, which had its origin in the premature birth of a child in 1890; that so extremely sensitive had she become that she could not wear a corset without enduring pain in her back and side. It seems that she had inflammation of the covering of the pelvic and abdominal organs, and that in 1893 her womb could not be examined by her physician for the reason that the inflammation was too great.

At the request of plaintiff the court gave to the jury the following instructions:

"1. The court instructs the jury that if they find from the evidence that on the 27th day of August, 1898, Central street was a public street of Kansas City; that on the said day there was a hole in the sidewalk on the east side of said street, between Eighteenth and Nineteenth streets, at a point about twenty-five feet north of Nineteenth street which made said sidewalk not in a reasonably safe condition for persons traveling over it; that said hole was known to the officers of Kansas City having supervision of its sidewalks, or could have been known to them if they had used ordinary care and diligence in the discharge of their duties in time to have repaired the same before said day; that on said day plaintiff, while in the exercise of ordinary care, as defined in other instructions, was traveling over said sidewalk, and stepped into said hole and was thereby thrown down and injured, then your verdict should be for the plaintiff.

"2. The court instructs the jury that the plaintiff had the right to assume that she could use the sidewalk on which she alleges she was walking when she fell, with safety, using such care as an ordinarily prudent person would exercise under like circumstances, and though she may have known the sidewalk was defective, yet this fact would not prevent her from recovering in this action, but should be taken into consideration by the jury with other facts and circum-

stances in evidence as to whether she was exercising ordinary care as above defined.

"3. If the jury find for the plaintiff, then in estimating her damages you may take into consideration all of the mental and physical pain and anguish already suffered by her, if any, and all future mental and physical pain and anguish, if any, that will reasonably result to her from said injuries, and if the jury find that her injuries are permanent and lasting in their character and effect they should take this fact into consideration and the jury should assess plaintiff's damages at such sum as in their judgment will compensate her for all sufferings, both past and future, if any, and for permanent disability, if any, that have or will reasonably result to her by reason of her injury, not exceeding the sum of $10,000, the amount claimed in plaintiff's petition."

At the request of defendant the court gave the following instructions to the jury:

"2. The court instructs the jury that in determining whether or not the defective condition, if any, of said sidewalk where plaintiff claims to have been injured, had existed for such a length of time that the defendant city would have known of it by the exercise of ordinary care, you should consider, among all the other facts and circumstances, as shown by the evidence in the case, the surroundings of the locality where said sidewalk is situated, the extent to which said sidewalk was used and the opportunity for observing and noting any defects therein on the part of the defendant city, and from all the facts and circumstances determine whether or not the defendant should have known of the said defective condition, if any, of said sidewalk prior to the date of plaintiff's injury.

"3. The court instructs the jury that the burden of proof in this case devolves upon the plaintiff to prove to your satisfaction, by a preponderance of

the credible testimony in the case, that the defendant city was negligent in the inspection and maintenance of the sidewalk at the place where plaintiff claims to have been injured, and by the burden of proof is meant the greater weight of the credible testimony in the case.

"4. The court instructs the jury that if you believe from the evidence that any witness has willfully and knowingly testified falsely to any material fact in issue, then you may disregard all or any part of the testimony given by such witness.

"5. The court instructs the jury that if you find and believe from the evidence that plaintiff fell and was injured on the east side of Central street at any point other than about twenty feet north of Nineteenth street, then your verdict will be for the defendant.

"6. The court instructs the jury that the city is not an insurer of the safety of its sidewalks, or the safety of those who travel upon its sidewalks. The fact that a person is injured by a fall upon a sidewalk is not sufficient in itself to establish liability on the part of the city. Such person can recover only when the city has failed to exercise the care and prudence of an ordinarily prudent man in the inspection and maintenance of its sidewalks in a reasonably safe condition for travel, and he has been injured by lack of such care on the part of the city, without any fault or negligence on his part directly contributing thereto.

"7. The court instructs the jury that if you find and believe from the evidence that any part or all of the injuries or conditions from which plaintiff now claims to suffer, was caused by lack of medical treatment, or improper medical treatment, then, as to that part of such injuries or condition entirely due to lack of medical treatment, or improper medical treatment, you can award to plaintiff no damages.

"8. The court instructs the jury that if you find

Vol 174 mo—36.

and believe from the evidence that all or any part of the conditions that plaintiff claims to have been caused by reason of falling on a sidewalk, existed prior to the time she fell upon said sidewalk, or if you find and believe from the evidence that all or any part of the conditions that plaintiff claims to have suffered from falling upon said sidewalk, are due to some other cause than said fall, then, in either event, you can award to plaintiff no damages for such conditions as you may believe from the evidence was not due to plaintiff's falling on said sidewalk.

"9. The court instructs the jury that it is the duty of people traveling on the sidewalks of the city to use ordinary care, their eyes and senses, to avoid any defects in a sidewalk which are obvious, or which they could discover by the exercise of ordinary care, and if you find and believe from the evidence in this case that an ordinarily prudent person, by the exercise of ordinary care, would have passed over said sidewalk at the time and place where plaintiff claims to have been injured, in safety, then your verdict will be for the defendant.

"10. The court instructs the jury that if you find and believe from the evidence that plaintiff knew, or by the exercise of ordinary care could have known, of the hole in the sidewalk at the place where plaintiff claims to have been injured, and by the exercise of ordinary care could have avoided it, then your verdict will be for the defendant.

"11. The court instructs the jury that defendant city is not bound to have its sidewalks in a reasonably safe condition for travel thereon at all times, but that its duty is limited to the exercise of the care and prudence of an ordinarily prudent man to have and keep its sidewalks in a reasonably safe condition for persons traveling thereon in the exercise of ordinary care on their part. The fact that a defect exists in a sidewalk, and that a person is injured thereby, is not

sufficient in itself to establish liability on the part of the city. Such person can not recover unless such defective condition had existed for such a length of time that defendant city or its officials charged with the supervision of sidewalks knew or by the exercise of ordinary care and caution could have known, of the defective condition of the sidewalk in such times, so that by the exercise of ordinary care they could have repaired it before the injury complained of.

"12. The court instructs the jury that if you find and believe from the evidence that the sidewalk on the east side of Central street, at the place where plaintiff claims to have been injured, was inspected by defendant city on or about the 23rd day of August, 1898, and at said time was in reasonably safe condition for travel and that after said date a board was broken or removed therefrom, then your verdict will be for the defendant unless you further find and believe from the evidence that after said board had been broken and removed therefrom, the defendant city could, by the exercise of ordinary care, have replaced it before the 27th day of August, 1898.

"13. The court instructs the jury that even should you find and believe from the evidence that the defendant city was negligent in the maintenance of the sidewalk at the place where plaintiff claims to have been injured, and that plaintiff was injured thereby, still you will award to plaintiff only nominal damages, as follows, viz., one cent, in case you further find and believe from the evidence that the condition plaintiff claims to have suffered as a result of said fall was entirely due to, or produced by some other cause."

To the giving of which instructions and each of them counsel for plaintiff then and there excepted.

The main ground of contention upon this appeal is with respect to instruction number seven, given in behalf of defendant, which plaintiff insists is errone-

ous, in that it tells the jury that they can award no damages for injuries or conditions from which plaintiff claims to suffer, which were caused by lack of medical treatment or improper medical treatment.

Upon this branch of the case Dr. Morrow testified that he was a practicing physician and surgeon of nearly twenty years practice; that he was called to see plaintiff the next day after the injury, and attended her for two or three months, until he could do no more for her, and thought that all she needed was rest. Dr. Drake testified that he removed the adhesions of the womb, by breaking them with his finger. Drs. Cordier and Block testified that this was improper and an aggravating circumstance.

The question with which we are thus confronted is, whether a person who has been injured by the negligence of another, and who employs a reputable physician to treat him for the injury, is responsible for the mistakes and errors of judgment of the physician and, also, if he is told by his physician that no further treatment is necessary, is he responsible if he could have been benefited by medical treatment? In other words, is the plaintiff responsible for the alleged unskillful treatment of Dr. Drake, without regard to the question whether she used ordinary care in his employment, especially in the absence of any evidence tending to show that he was not a reputable physician? He was the graduate of a medical college and had been practicing medicine for thirty years.

It seems both upon reason and authority, that when a person is injured by the negligence of another he is bound to use ordinary care to the end of his restoration or cure, and is not responsible for the mistakes of an attending physician, and when he acts in good faith under the direction of such physician, any mistake of the latter in the treatment will not absolve the party whose negligence caused the injury from liability in damages therefor.

Stover v. Inhabitants of Bluehill, 51 Me. 439, was an action for damages to a lady, occasioned in consequence of a defective highway. The court instructed the jury that it was the duty of the plaintiff to employ a surgeon of ordinary professional knowledge and skill, and to follow his necessary directions and that if the jury should find they had done so, the plaintiff would be entitled to recover compensation for the damages sustained, though such surgeon should have treated the womb unskillfully, and by such unskillful treatment prevented it from recovering under skillful treatment. In passing upon exceptions to this instruction Dickson, J., in speaking for the court, said:

"The exceptions raise the question whether the defendants are liable for the increased damages, if any, arising from the unskillful treatment of the wife of plaintiff by a surgeon of ordinary professional skill and knowledge, without any fault on her part. . . . They employed a competent surgeon. This was all they (unprofessional persons) could do. The necessity to do this was imposed upon them, not by their own fault, but by the fault of the defendants. If they had neglected to procure the services of a competent surgeon, having the ability to do so, or employed an incompetent one, whereby the injury had been aggravated, it is clear that they could not recover damages for the injury thus increased; the law does not permit a party thus to take advantage of his own negligence or misconduct. Yet, upon the theory of the party excepting, the same legal consequences result to them from their diligence, as from their negligence, from their discharge, as from their neglect of a duty imposed by law, if the surgeon employed, however competent, happens to increase the injury by unskillful treatment. It is difficult to discover the soundness of that principle which requires a party injured, without fault on his part, to insure, not only the surgeon's professional skill, but also his immunity from accident,

mistake or error in judgment, and which precludes such party from recovering of the original wrongdoer damages arising from no fault on his part, and from causes beyond his power to control. On the contrary, there seems to be good reason for holding the party originally in fault responsible for the damages resulting to the innocent party under such circumstances. Indeed, the liability of a competent surgeon to mistake, accident, or error in judgment, as well as that of the party complaining to an increase of his injuries from other causes beyond his control, are among the 'mischievous consequences' referred to in Rigley v. Hewitt, 5 Exch. 240, that may reasonably be expected to result under ordinary circumstances from defendant's 'misconduct,' and for which they are responsible. The unskillful treatment of the surgeon, itself, if any there was, arose as a consequence of the original fault of the defendants. In the present imperfect state of medical science, and amidst the conflicting theories of medical men, as well as the uncertain reliance to be placed upon the different modes of treating injuries and disease, it would not be difficult to make it doubtful, in a given case, if the professional treatment might not have been improved, or was unskillful, and thus a way of escape might be prepared for wrongdoers from the legitimate and legal consequences of their negligence or misconduct. The principle, therefore, of holding the defendants responsible, is founded in sound reasons of public policy. It is also sustained by decided cases of courts of acknowledged authority.''

Pullman Palace Car Company v. Bluhm, 109 Ill. 20, was an action for damages for a broken arm which resulted in a false joint. Defendant contended that this result was due to bad surgery. The court held that a party when injured is bound by law to use ordinary care to render the injury no greater than necessary; that it is his duty to employ such physicians and nurses as ordinary prudence in his situation may re-

quire and to use ordinary judgment and care in doing so, and to select such only as are of at least ordinary skill and care in the profession, but that the law does not make him an insurer in such case, and if defendant is responsible for the injury in the first instance he will be liable for the unfavorable results of it.

The same rule is announced in Loeser v. Humphrey, 41 Ohio St. 380; Reed v. Detroit, 108 Mich. 224; Tuttle v. Farmington, 58 N. H. 13; Lyons v. Railroad, 57 N. Y. 489; City of Goshen v. England, 119 Ind. 368; Collins v. Council Bluffs, 32 Iowa 324; Selleck v. Janesville, 100 Wis. 157; and McGarrahan v. Railroad Co., 171 Mass. 211.

But it is said for defendant that the law is that a person suffering from disease or previous injury, who meets with another accident, is not entitled to recover for such conditions as are entirely due to his or her previous injury or disease, and that this is all that the instruction under consideration told the jury. But this we do not think a fair interpretation of the instruction, which is susceptible of no other meaning than that plaintiff is not entitled to recover for injuries augmented by improper medical treatment, although she used ordinary care in the selection of a physician and was not, therefore, responsible for his errors and mistakes, but on the contrary the defendant is. In fact, the instruction told the jury in so many words that plaintiff was not entitled to recover damages for injuries caused by lack of medical treatment, or improper medical treatment, when under the circumstances disclosed by the record in this case the law is otherwise.

But defendant insists that when this instruction is considered in reference to the peculiar facts of this case as shown by the evidence and also with reference to the other instructions given for plaintiff and defendant, it is not erroneous.

One of the instructions given at the instance of plaintiff and claimed by defendant as being an antidote for said instruction number seven is the one numbered three, but it needs only a casual reading of it to see that it does not do so. In fact, instruction number seven eliminates from it any and all consideration by the jury in estimating plaintiff's damages, any part or all of the injuries caused by lack of medical-treatment, or improper medical treatment, when she was entitled to have such injuries considered by the jury, and is in conflict rather than in harmony with said instruction.

Nor does instruction number eight, given for defendant, relieve instruction number seven of its objectionable features, for while plaintiff was not entitled to recover damages for such conditions as were entirely due to her previous injury or disease, if any such state of facts existed (Brown v. Railroad, 66 Mo. 588), she was entitled to have considered by the jury, in estimating her damages, any injury that may have been caused by improper medical treatment.

For the error indicated the judgment is reversed and the cause remanded.

All of this Division concur.