STATE OF MONTANA, ACTING BY AND THROUGH THE STATE HIGHWAY COMMISSION OF THE STATE OF MONTANA, PLAINTIFF AND APPELLANT, *v.* B. C. KINMAN AND MARY ANN KINMAN, HUSBAND AND WIFE, DEFENDANTS AND RESPONDENTS.

No. 11287.
Submitted June 22, 1967. Decided July 5, 1967.
430 P.2d 110.

Daniel J. Sullivan (argued), Helena, for appellant.

Joseph P. Monaghan (argued), Butte, John W. Bonner (argued), Helena, for respondents.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This proceeding involves a condemnation action involving property located high above Butte, Montana, astride the Continental Divide. The Divide serves as a natural boundary between Silver Bow County on the west and Jefferson County to the east. The taking involved some 4.3 acres of the Nellie Kinman Quartz Lode Mining claim upon which the respondents now reside, such property being located partly in both counties.

To recite the tortuous trail of this litigation since its inception in November 1963 would be interesting though it is unnecessary to the issue herein presented. Suffice to say that some eight or nine district judges' names appear in the record and as yet no final determination of compensation has occurred. From the very beginning, when by stipulation the parties to the action changed the venue from Jefferson County to Silver Bow County, the necessity for the road has been admitted and agreed to.

On July 19, 1965, a default judgment was entered against the respondents, the respondents inexcusably failing to appear. We note also that respondent Kinman is and has been an attorney at law, admitted to practice on November 18, 1949. As such he is chargeable with knowledge of the law and particularly for candor and integrity in open court stipulations referred to hereinafter. Three days later a hearing was held before the Honorable District Judge Sid Stewart to determine compensation, and on that same date Judge Stewart rendered his findings of fact, conclusions of law and judgment, putting the State in possession on September 1, 1965. After numerous

motions and the disqualification of Judge Stewart by the respondents, the cause was referred to the Honorable Philip C. Duncan, District Judge who on July 30th set aside the default by approving a stipulation entered into between the parties, but in so doing the court, by virtue of the stipulation upheld the order of possession previously entered and permitted the State to proceed with the construction of the project; and provided further that Mr. and Mrs. Kinman should vacate the premises by at least September 1, 1965. This order was modified by Judge Duncan on September 10, 1965, to allow the respondent Kinmans to remain on the property until January 1, 1966. It is this order of September 10, 1965, that the State contends the respondents are in contempt of for they have failed to remove themselves from the premises as agreed upon both by stipulation and as provided in the Order.

The State filed an affidavit of contempt on September 28, 1966, which ultimately came to a hearing in combination with the State's motion to set aside the stipulation entered into on July 30, 1965, and which formed the basis for the court's Order of September 10, 1965. These matters were heard by the Honorable Thomas Dignan, District Judge, for in the meantime Judge Duncan had disqualified himself and the Honorable Judge Jack R. Loucks, had also disqualified himself, and Judge Dignan had been called in. After a hearing Judge Dignan denied the State's request to find Mr. Kinman in contempt and held that he could remain in possession until after the jury trial. From this Order the State appeals.

The Appellant lists three specifications of error with respect to Judge Dignan's actions, contending that the court was in error:

(1) In refusing to set aside the sipulation;

(2) In ordering possession to remain in the defendants; and

(3) In absolving defendants from contempt.

There were but two issues before Judge Dignan at the hearing held October 31, 1966. One was whether or not respondent

B. C. Kinman was in contempt of the order of the court dated September 10, 1965, in refusing and willfully neglecting to obey said order, and secondly, whether the failure and refusal to carry out the stipulation dated July 30, 1965, and carried into the court's Order of September 10, 1965, entitled the State to have the stipulation of July 30, 1965, set aside and the default judgment reinstated.

The district judge, however, at the time of the hearing went into the matter of the validity and merits of the court's order of September 10, 1965, even though no issue had been raised by either party thereto. Recalling that Judge Dignan did not enter either order it is at once evident that he attempted to exercise appellate jurisdiction over the actions of the judges who entered the orders, and in this particular he exceeded his jurisdiction. Article VIII, §§ 3 and 11, Mont. Constitution. Throughout the hearing, testimony was allowed concerning the construction program of the State, whether or not a two-lane or four-lane highway was to be constructed, and when. However, Judge Dignan recognized and ruled several times that "this court has no jurisdiction to amend that order of necessity." Again later in the hearing the court said: "Now the defendants have moved to amend the stipulation, which is denied. The defendants have moved the court to reconsider. The court does not have jurisdiction to reconsider anything that has gone on before, as most of the judges have ruled on these things. The court again states there is a necessity for that highway there * * *."

Yet in considering the matter of contempt he said: "* * * Now if that motion had been brought in April at the time before the highway was completed, the Court would consider it. But in view of the fact the highway was completed, the court will not hold Mr. Kinman in contempt because it is an idle gesture, just no use for that. * * *" By his very words he recognized a contempt of the order yet by his consideration of extraneous facts he nullified it.

▮ Considering the entire record, its history, its parties, even though we find the district court was in error; yet the trial judge in good conscience was endeavoring to expedite a trial on the merits; that is, a trial to determine the value of the land taken. However, this overlooks the rights of the State of Montana. This State, in commendatory fairness, has endeavored to achieve possession while yielding other valid rights so that a hearing to determine value might be had. The State has been met with contemptuous disregard for its rights. The fact situation as indicated by the trial court in its comments in the record are such that the trial court should have found specifically respondents Kinman in contempt. The trial court actually made such a conclusion as hereinbefore indicated, but concluded that it was an idle gesture. Idle gesture indeed! Respondents' actions were a direct contemptuous flouting of their own stipulation, of direct court orders, and of valid and valuable rights of the State. As such this court cannot and will not ignore its duty to correct the error. Therefore to end this phase of the litigation, contempt is found.

It should be remembered that after possession is granted the State the ultimate goal of the eminent domain proceedings are the value of the lands taken; that here a judgment as to value has been set aside conditionally. In this situation we feel justified in ordering that the above finding of contempt may be purged by the respondents in the manner hereinafter set forth *and in no other way.*

Immediately upon receipt of a copy of this Opinion and Order, the respondents Kinman will forthwith vacate the premises, cease occupying the land taken, and yield possession without further delay. Such vacation of occupancy and yielding of possession will be had by August 15, 1967.

The foregoing Order is a condition precedent to a jury trial to determine the value of the lands. Should the respondents fail to purge themselves of the contempt found in the time allowed, the aforementioned judgment as to value will be re-

instated and further proceedings had in contempt. It is so ordered.

Remittitur shall issue immediately.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR and CASTLES concur.