STATE OF MONTANA ex rel. IVAR STENBERG, Petition-
er and Relator, v. ROBERT J. NELSON, District Judge
of the Eighth Judicial District of the State of Montana
in and for the County of Cascade, Respondents.

No. 12030.
Submitted April 2, 1971.
Decided May 27, 1971.
486 P.2d 870.

Emmet T. Walsh (argued) Seattle, Wash., for petitioner and relator.

Jardine, Stephenson, Blewett & Weaver, John D. Stephenson, Jr. (argued), Great Falls, Poore, McKenzie & Roth, James A. Poore, Jr. (argued), Butte, Gough, Booth, Shanahan & Johnson, Ward A. Shanahan, (argued), Helena, for respondents.

MR. JUSTICE HASWELL delivered the Opinion of the Court.

This is an application for a writ of prohibition or other appropriate relief by petitioner Ivar Stenberg from an order of the District Court of Cascade County severing his medical malpractice suit against several doctors into three separate cases.

Petitioner here is the plaintiff in a medical malpractice action now pending in the District Court of Cascade County against five physicians. Petitioner was injured in a mine accident in June 1963 while in the employ of the Boland Development Company engaged in sinking of a shaft in the Kelly mine of the Anaconda Company in Butte, Montana. He placed himself under

the care of Dr. Jack Harper in Helena the following November and on December 6, 1963, Dr. Harper performed an anterior spinal fusion operation on petitioner which involved, among other things, the placing of a device known as a T-Humphrey clamp plate within petitioner's body against certain vertebrae.

Thereafter petitioner became dissatisfied with his postoperative condition and consulted Dr. R. B. Richardson of the Great Falls Clinic in August 1964. After a period of further examination and treatment, principally by Dr. Richardson, it was determined that corrective surgery involving removal of the T-Humphrey clamp plate should be undertaken. This operation was performed in the Deaconess hospital in Great Falls on November 9, 1964 by doctors associated with the Great Falls Clinic, principally Dr. L. M. Taylor as surgeon, with Dr. J. W. Bloemendaal assisting him. Following the operation and postoperative care, petitioner was discharged from the hospital on November 24, 1964.

On December 16, 1964, plaintiff went to the emergency room of the Silver Bow General Hospital due to bleeding from a right inguinal incision and placed himself under the care of Dr. N. C. Rosston of Butte. During hospitalization, Dr. Rosston performed an exploratory operation on petitioner to try to locate the source of the bleeding, and thereafter sent petitioner back to the doctors at the Great Falls Clinic by airplane on December 22, 1964. Due to inclement weather and the condition of petitioner enroute to Great Falls, petitioner was removed from the plane at Helena, examined by a physician, and later treated by Dr. John McMahon who hospitalized and operated on petitioner on December 26. He was released from the hospital on January 23, 1965.

As a result of the mine accident, petitioner filed a third party suit against the Anaconda Company and eventually settled the same for $40,000, executing a release on September 20, 1964.

On December 6, 1966, petitioner filed suit for damages based on alleged medical malpractice in the district court of Silver Bow County in Butte. Named as defendants were Dr. Harper,

the Great Falls Clinic and three doctors there—Drs. Richardson, Taylor and Bloemendaal, and Dr. Rosston. One other doctor at the Great Falls Clinic was originally named as defendant, but was subsequently dismissed for nonservice upon him. The medical defendants fall into three groups: Dr. Harper in Helena; the three doctors and the Clinic in Great Falls; and Dr. Rosston in Butte. The three groups of defendants were charged with successive acts of negligence and although acting severally and independently and not jointly, are alleged to be jointly liable for all damages suffered by petitioner. Each group of defendants is represented by different counsel, have appeared separately and filed separate pleadings, and contend that each group is not liable for any negligent acts or omissions of any other group.

Subsequently the venue of the malpractice action was transferred to the District Court of Cascade County in Great Falls on June 28, 1967. There the Hon. Paul G. Hatfield, district judge, assumed jurisdiction which he continuously held until his disqualification on January 13, 1971.

During the period of Judge Hatfield's jurisdiction, extensive pretrial discovery was carried on by all parties consisting of depositions, interrogatories and answers, request for admission of fact and responses, conferences and agreements including a pretrial conference, and a variety of motions and rulings thereon by the district court. It is readily apparent from detailed examination of the district court file, which consists of four separate and voluminous volumes, that throughout the history of this complex litigation all parties were thoroughly exhausting all procedures for pretrial discovery, formulation of issues, and preparation of proof for the trial which are available to them under the Montana Rules of Civil Procedure, and that none of the parties was chargeable with unnecessary delay or dilatory tactics.

Among other things, Judge Hatfield entered an order dated January 23, 1970 denying the separate motions of the defendants for separate trials and ordering all of petitioner's claims

against the various defendants tried in one trial, before one jury. In the same order, defendants were required to serve their respective answers within 20 days.

The three groups of defendants answered separately, with defendants Harper and Rosston subsequently filing amended answers within two weeks. In general terms, the answers of the three groups of defendants were substantially similar consisting of (1) substantially a general denial of negligence, proximate cause, and damages coupled with an express denial of any joint action with any other group of defendants, and (2) the defense of release by plaintiff of the Anaconda Company alleged to bar plaintiff's claims or alternatively to constitute a mitigating offset against any recovery by plaintiff.

Thereafter, about 25 days prior to the scheduled pretrial conference, plaintiff gave notice of his intention to seek amendment of his complaint at the pretrial conference by adding five additional allegations of negligence against the Great Falls Clinic and its defendant doctors, four additional allegations of negligence against defendant Harper, and three additional allegations of negligence against defendant Rosston. The additional allegations against the Great Falls Clinic and its defendant doctors related to postoperative diagnosis, care and treatment of plaintiff following his operation at the Great Falls Deaconess hospital. The additional allegations against defendant Harper concerned use of an alleged experimental device (the T-Humphrey clamp plate) not acceptable to the medical profession, failure to diagnose a postoperative infection, and failure to call in a specialist to perform the operation which was beyond the competency of a general surgeon. The additional allegations of negligence against defendant Rosston related to failure to call in a competent vascular surgeon, failure to provide medical accompaniment to plaintiff on his airplane trip, and failure to advise the Helena doctor of plaintiff's need for immediate emergency care and treatment.

A pretrial conference was held on November 16, 1970, but no pretrial order was entered. However, a resume of such con-

ference was filed by Judge Hatfield indicating (1) the trial date was continued to February 1, 1971 upon agreement of counsel, and (2) plaintiff's amendments to his complaint were allowed. Various other matters were decided that have no significance in the present proceeding.

Judge Hatfield was disqualified on January 13, 1971 and the Hon. R. J. Nelson, district judge, assumed jurisdiction the same day. After notice and hearing, Judge Nelson entered an order dated January 25, 1971, requiring severance of petitioner's malpractice action into three separate cases: Case #1—plaintiff's action against Dr. Harper. Case #2—plaintiff's action against the Great Falls Clinic and its three doctor defendants. Case #3—plaintiff's action against Dr. Rosston. The proposal to sever was raised by Judge Nelson on his own motion and not by counsel for any of the parties.

Thereafter petitioner filed the instant application with this Court seeking review of Judge Nelson's order of January 25, and issuance of a writ of prohibition or other appropriate relief therefrom, together with damages and attorney fees. Extensive briefs were filed by all parties, oral argument had, additional briefing time granted, with the matter finally submitted to this Court for decision.

The issue as stated by counsel for petitioner is whether Judge Nelson exceeded his jurisdiction by severing petitioner's malpractice action into three separate cases on his own motion in view of Judge Hatfield's previous ruling to the contrary.

The gist of petitioner's argument is that whole Judge Hatfield had jurisdiction to change his previous order for one trial before one jury if he later determined that he had ruled incorrectly in the first instance, Judge Nelson had no jurisdiction to change Judge Hatfield's order which became res judicata and the "the law of the case" upon Judge Hatfield's disqualification. Petitioner argues that the sole discretion to change his original order reposed in Judge Hatfield alone; otherwise it would amount to permitting a coequal judge of the same powers and jurisdiction to sit in appellate review of the orders of the

first judge. Petitioner cites the rationale of State ex rel. State Highway Commission v. Kinman, 150 Mont. 12, 430 P.2d 110, condemning such practice, as controlling precedent in the instant case. Petitioner alternatively argues that, in any event, Judge Nelson abused his discretion by severing the litigation into three separate cases. Additionally, petitioner claims that Judge Nelson's order violates the agreement of counsel on a trial date for the entire action.

Initially, we proceed to consideration of the *Kinman* case and its applicability to the instant case. *Kinman* involved a condemnation proceeding by the state to acquire land for a highway. Eventually necessity was determined, the state was put into possession, and the property owners were ordered to vacate the premises by a certain date. When the property owners did not vacate, the state brought a contempt proceeding before a successor judge. The successor judge went into matters concerning the construction program of the state and the necessity for building the road, and allowed the property owners to remain in possession and absolved them from contempt. This Court held that this constituted an appellate review of a prior court order and a relitigation of matters already decided without any issue having been raised by either party concerning the validity of the prior orders.

*Kinman* is clearly distinguishable from the instant case. There a direct adjudication of some of the substantive rights of the parties was involved, while the instant case concerns discretionary procedural matters not affecting the merits of the litigation. Although substantive rights of the parties that have once been adjudicated ordinarily become the "law of the case" and subject only to review by an appellate court, discretionary procedural rulings concerning the manner in which litigation will be tried must necessarily remain subject to review and modification by the presiding judge to meet the exigencies of the particular case as it develops. Here, Judge Hatfield's ruling that all claims of petitioner against the various defendants would be tried in one trial before one jury was made prior

to the filing of any of the defendants' answers to the complaint, prior to the filing of pretrial memoranda, prior to the pretrial conference, and prior to allowance of extensive amendments to petitioner's complaint. To deny Judge Nelson the discretion to sever the action into three separate cases one year later, after the foregoing developments had occurred and the considerations had become more readily apparent, amounts to a denial of the flexibility of trial procedure that the Montana Rules of Civil Procedure command.

Three of the Montana Rules of Civil Procedure are involved in the instant case, Rules 20(b), 21, and 42(b), providing as follows:

*Rule 20(b).* "*Separate Trials.* The court may make such orders as will prevent a party from being embarrassed, delayed, or put to expense by the inclusion of a party against whom he asserts no claim and who asserts no claim against him, and may order separate trials or make other orders to prevent delay or prejudice.''

*Rule 21.* "*Misjoinder and nonjoinder of parties.* Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.''

*Rule 42(b).* "*Separate Trials.* The court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, cross-claim, counter-claim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counter-claims, third-party claims, or issues.''

These three Montana Rules are identical to the Federal Rules of Civil Procedure (except for an irrelevant amendment to Rule 42(b) in 1966). Accordingly, we may look to interpretations of these Federal Rules from which our Montana Rules are derived, for guidance in interpreting our Montana Rules.

318

Referring to Federal Rule 20(b), the following quotation from Barron and Holtzoff, Federal Practice and Procedure, V. 2, § 535, p. 207, aptly summarizes its purpose:

"Thus Rule 20(b) emphasizes the general philosophy of the joinder provisions of the rules, which is to permit virtually unlimited joinder in the first instance, but give the judge a wide discretion to shape the trial to the necessities of the particular case * * *. Except as a matter of emphasis, there is no need for Rule 20(b). The powers granted the court by that rule are all contained in the more general grant of Rule 42(b)."

Federal Rule 21 simply indicates that "Any claim against a party may be severed and proceeded with separately."

The considerations underlying Rule 42(b) are summarized in the following quotation from Barron and Holtzoff, Federal Practice and Procedure V. 2B, § 943, pp. 189, 190:

"Ultimately the question of separate trials should be, and is, within the discretion of the court. It must weigh whether one trial or separate trials will best serve the convenience of the parties and court, avoid prejudice, and minimize expense and delay. The major consideration, of course, must be which procedure is more likely to result in a just final disposition of the litigation."

The trial court under Rule 42(b) retains inherent power to reverse a ruling granting separate trials on counterclaims until final judgment is entered. Partmar Corp. v. Paramount Theatres Corp., 347 U.S. 89, 74 S.Ct. 414, 98 L.Ed. 532, rehearing denied 347 U.S. 931, 74 S.Ct. 527, 98 L.Ed. 1083. We perceive no reason why the converse is not equally true—that the trial court after ordering one trial before one jury retains power and jurisdiction subsequently to order separate trials.

Petitioner here, while conceding during oral argument jurisdiction to Judge Hatfield to change his original order that all claims be tried in one trial before one jury and denying severance, argues that this discretion reposed in Judge Hatfield alone, as he made the original order and that upon his disqual-

ification such discretion and jurisdiction became exhausted and extinguished. Petitioner argues that to hold otherwise would permit counsel to engage in a game of "judge's roulette" by successive disqualifications and redeterminations by subsequent judges under the extreme liberality of Montana statutes on disqualification of judges. While we are mindful that this practice could occur, we are equally mindful of the overriding consideration that the presiding judge must have control of trial procedures to the extent of shaping trials to meet the developing circumstances of the case before him. As we consider it unwise to kill the patient to cure the disease, if experience proves such abuse of disqualification statutes, the remedy is by legislative amendment to such statutes rather than by judicial decision denying the judge control of the trial.

■ Finding, as we have, that Judge Nelson had jurisdiction to order severance of petitioner's action into three separate cases, we face the question of whether his action in this regard constituted an abuse of the discretion vested in him. From what has been said heretofore, the considerations are trial convenience, avoidance of prejudice, and minimizing expense and delay, all to the end of adopting that procedure which will result in a just final disposition of the litigation.

■ Applying these considerations to the instant case, we find many conflicting interests to be considered. From the standpoint of the petitioner it is advantageous to try all issues in a single trial. One trial will presumably be less expensive, time consuming, and enable all defendants to be before the same jury for determination of their respective liability; it may minimize the effect of one defendant attempting to shift the blame on the other; it may minimize delay in getting all of petitioner's claims adjudicated; and it will present but a single case for appeal.

From the standpoint of defendants separate trials are more advantageous. Such procedure will avoid prejudicing the rights of any one defendant by reason of: the acts or omission of an-

other defendant, confusing rulings on evidence applicable to one defendant and not another; confusing the jury by separate instructions applicable to but one defendant and not the others and the greater possibility of error requiring a new trial. It is also to be noted that petitioner should be equally concerned with the avoidance of prejudicial error which will certainly be minimized by separate trials. What good is a verdict for petitioner if a new trial is ordered?

Because of the confusion and possible prejudice involved in the trial of a case involving three separate groups of defendants who acted independently, successively, at different times, in different places, and whose acts or omissions were entirely dissimilar, we cannot say that Judge Nelson abused his discretion in ordering severance of plaintiff's action into three separate cases. We note that substantial time intervals elapsed between the acts of the three groups of defendants and that petitioner's medical condition between each is well documented so any damages are readily apportionable in case of several liability.

Additionally we note petitioner's complaint that Judge Nelson's order violates the agreement of counsel. Be that as it may, the delay is at least a partial result of petitioner's amendment of his complaint approximately four years after it was filed. The resulting need for further pretrial discovery and the resulting delay in the trial are not chargeable to defendants or the trial judge. Petitioner cannot complain of a result flowing from his own actions.

For the foregoing reasons, petitioner's application is denied and dismissed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES DALY, and CASTLES, concur.

MR. JUSTICE JOHN C. HARRISON dissents.