**STATE of Missouri ex rel. Barton S. BLOND and Anne Blond, Relators,**

v.

**The Honorable Tom J. STUBBS, Respondent.**

**No. KCD 25972.**

Missouri Court of Appeals, Kansas City District.

Sept. 7, 1972.

Richard F. Adams, Slagle & Bernard, Kansas City, for relators.

Roy A. Larson, Jr., Sprinkle, Carter, Larson & Hanna, Kansas City, for respondent.

## ORIGINAL PROCEEDING IN PROHIBITION

WASSERSTROM, Judge.

This proceeding is before the court on a writ of prohibition to test the jurisdiction of the respondent circuit court to drop three of the defendants as parties under Rule 52.06 V.A.M.R.

The case arises from injuries suffered by relator Barton Blond, on March 31, 1969, occasioned by alleged defects in a doorway in a building operated by defendant Tenth and Main Corporation. Relators, plaintiffs in the court below, allege that as a result of those injuries relator Barton Blond was treated successively by each of the three defendant doctors. The first of these latter defendants is Dr. Adelman who rendered treatment from the date of the initial injuries until April 1, 1969, which treatment relators allege was negligently performed and thereby aggravated the initial injury. Relator Barton Blond then went to Dr. Abella for treatment from April 10 to 21, 1969, which treatment the relators allege was also negligent and further aggravated the basic injuries. Then from April 21, 1969 until February, 1970, treatment was rendered by Dr. Overesch, which treatment relators allege was also negligent and still further aggravated the original injuries.

Relators' first amended petition in the trial court is in four counts. Count I is by Barton Blond against the three doctors for damages due to their alleged malpractice. Count II is by Barton Blond against Tenth and Main Corporation, for the original alleged negligence in maintenance of the building doorway. Count III is by Anne Blond, wife of Barton Blond, against the three doctors for loss of consortium. Count IV is by Anne Blond against Tenth and Main Corporation for loss of consortium.

After filing answers, Drs. Overesch and Abella filed motions under Rule 52.06 V. A.M.R. to be dropped as parties defendant. The court below announced its intention to

sustain those motions and also to drop Dr. Adelman as a party on the court's own motion, all pursuant to Rule 52.06. It was with reference to that threatened action that relators applied to this court for a writ of prohibition.

In their application for the writ, relators claim that the court below is threatening to act in excess of its jurisdiction and should therefore be prohibited because: (a) all four defendants have been properly joined under Rule 52.06; and (b) since there was no misjoinder, the trial court has no jurisdiction to drop any defendant under Rule 52.06. Respondent controverts both of these propositions, thus sharply delineating the issues here for determination.

I

The requirements for joinder of parties under Rule 52.05 are: (a) the claims against the defendants must arise out of the same transaction, occurrence or series of transactions or occurrences; and (b) some question of law or fact common to all of the defendants must be present. Both of those requirements are met by the allegations of the amended petition herein.

The key factor in this case, so far as joinder of parties is concerned, is the doctrine that a tort-feasor is liable not only for his own original acts of negligence, but also for any acts of medical malpractice which occur in the normal course of treatment for the original injury. This factor constitutes the rim encircling all of the various aspects of this case and all of the four defendants. More to the point, this rule of law gives the reason why there is a common occurrence or series of occurrences and why there are common questions of fact and law affecting all defendants.

The principle referred to is firmly established by the decisions of the courts of this State, which hold that a defendant who negligently causes a personal injury is liable also for the harm resulting from the manner in which normal medical, surgical or hospital services are rendered, it being deemed that such medical services flow naturally from the original injury. The original negligence is to be considered as a proximate cause of aggravation due to negligence in the furnishing of the medical services, and the medical treatment is not considered to be an insulating intervening cause. Staehlin v. Hochdoerfer, Mo., 235 S.W. 1060; Parkell v. Fitzporter, 301 Mo. 217, 256 S.W. 239; Schumacher v. Leslie, en Banc, 360 Mo. 1238, 232 S.W.2d 913; Boehmer v. Boggiano, Mo., 412 S.W.2d 103; Wilson v. Hungate, Mo., 434 S.W.2d 580; Persten v. Chesney, Mo.App., 212 S.W.2d 469. The Missouri rule stated in the foregoing cases is in accord with the law generally. 2 Restatement of Torts 2d, § 457, p. 496.

By reason of the operation of the foregoing rule, defendant Tenth and Main Corporation is liable not only for its own alleged negligence, but also for the alleged negligence of all four doctors; likewise, defendant Adelman is liable, not only for his own alleged negligence, but also for that of the two succeeding doctors; likewise, defendant Abella is liable for his own alleged negligence and also that of defendant Overesch. The net result of all this is that the alleged negligence of Dr. Overesch is a common occurrence for which all four defendants have potential liability, and all questions of fact and law pertaining to the treatment of Barton Blond by Dr. Overesch become questions common to all four defendants. This alone satisfies the two requirements for joinder of parties under Rule 52.05. Moreover, the ultimate physical condition in which Barton Blond found himself in February, 1970, was the result to which the acts of all four defendants had contributed. The acts of all four are logically related as a "series of occurrences" and the extent of the final disability is clearly a question common to all defendants.

This conclusion supporting the propriety of joinder has been reached under similar circumstances in State ex rel. Smith v. Weinstein, Mo.App., 398 S.W.2d 41, l.c. 43–44. In that case the plaintiff suffered an injury in an automobile accident. That injury was aggravated when the ambulance in which he was being taken to a hospital collided with still another automobile. The court held that the driver in the original accident can be joined under Rule 52.05 in a suit also naming as defendants the ambulance driver and the driver of the second automobile. In answer to an argument that the two accidents were so separate that they did not constitute the same occurrence or series of occurrences, the court answered:

> "In our view the deciding factor in the case at the bar is whether or not under the facts alleged, defendant Wilma N. Smith can be held liable to plaintiff for the injuries received in the second accident or for the aggravation of the injuries sustained in the first accident. If so her joinder with others as defendants was proper.

> "A person who has received an injury due to the negligence of another is entitled to recover all damages proximately traceable to the primary negligence, including subsequent aggravation which the law regards as a sequence and natural result likely to flow from the original injury, even though there may have been some intervening agency contributing to the result. 15 Am.Jur., Damages, Sec. 83. Thus it has been held that the original wrongdoer who negligently causes injury to another may be held liable to the latter for the negligence of a physician who treats such person where such negligent treatment results in the aggravation of such injuries. Elliott v. Kansas City, 174 Mo. 554, 74 S.W. 617. The reason for the rule is that the employment of a physician is to be regarded as a natural consequence of the original wrong, because the necessity for such employment was imposed on the injured

party by the fault of the original wrongdoer. It is also stated that such liability is founded in sound reasons of public policy. Restatement, Torts, p. 1215, Sec. 457 Com. (b); Elliott v. Kansas City, supra.

\*   \*   \*   \*   \*   \*

"This is the view expressed in Lucas v. City of Juneau, 127 F.Supp. 730, 15 Alaska 413, a case very similar to the one at bar. There the question presented was whether the original tort-feasor and the owner of an ambulance whose driver's negligence caused a collision while conveying the plaintiff to a hospital, which accident aggravated the previous injuries, could be joined as defendants under Rule 20(a), Fed.Rules Civ. Proc., which rule is identical in its terms with our Civil Rule 52.05. The court held that the original tort-feasor was liable for the aggravation of the injuries received in the second accident, and it and the owner of the ambulance were properly joined as defendants, since there was a single occurrence giving rise to a right to relief, which presented questions of fact common to both."

See also Gordon v. Manzella, D.C.W.D. Mo., 270 F.Supp. 40, l.c. 42, and the cases therein cited.

## II

We now come to the more difficult question as to whether parties who have been properly joined as defendants under Rule 52.05 may be dropped as parties under Rule 52.06. No Missouri case has been cited on this point by either party and our independent research discloses none. However, Missouri Rule 52.06 is parallel to the similar Federal Rule 21 covering the same subject. There has been considerable legal writing and judicial interpretation of Federal Rule 21, and we can look to those sources for guidance to a proper interpretation of Missouri Rule 52.06.

The standard texts on the Federal Rules of Civil Procedure stress the historical

background underlying all the rules concerning parties, and also the interrelationship between the various rules. Thus, in Federal Practice and Procedure, Wright and Miller, Civil, Vol. 7, § 1681, p. 319, the authors state:

"Except in cases involving joinder of defendants in tort actions, misjoinder and nonjoinder of parties were fatal defects in actions at common law; a pleading that revealed a joinder defect was subject to attack by general demurrer, motion in arrest of judgment, writ of error, nonsuit, or plea in abatement. In contrast to these severe consequences, the federal equity rules and the English rules of practice generally allowed plaintiff to amend his complaint to correct a defect in parties. As a result, an action could proceed on its merits despite an initial misjoinder or nonjoinder, whenever the error could be corrected without adversely affecting the parties to the action.

"Rule 21 was derived from the federal equity rules and the English rules of practice existing at the time the Federal Rules of Civil Procedure were adopted. It provides the courts with a valuable procedural device that can be used to avoid multiple litigation and to promote liberal joinder of parties.

\*     \*     \*     \*     \*     \*

"By providing for the dropping and adding of parties on terms that are just, Rule 21 furthers the policy of the federal rules to continue and determine on action on its merits whenever that can be done without prejudice to the parties."

The subject is amplified by Moore's Federal Practice Second Edition, Vol. 3A, § 21.03, p. 21–5, as follows:

"Misjoinder at common law was serious and fatal. Such a rule constituted a blind adherence to technical rules of joinder that were wholly divorced from the merits of the case. Rule 21 is a wholesome repudiation of the common

law rule. It is in line with modern practice. 'Misjoinder of parties is' no longer 'ground for dismissal of an action.' The misjoined party should be dropped at any stage of the action on such terms as the court deems just, either on motion of a party or on its own initiative.

"If there are misjoined claims due to multiple parties, as pointed out above, the action need not be dismissed. The misjoined claims may be severed and proceeded with separately,   .  .  .. So although unlimited permissive joinder of parties is not provided for, the restrictions contained in Rule 20 are slight and need not prove fatal. The court may, and in most cases will, in the interest of effective judicial administration, sever and proceed with the misjoined claims.

\*     \*     \*     \*     \*     \*

"While a properly joined claim may be severed under the circumstances discussed in ¶ 21.05, *infra*, Rule 21 is mainly concerned with non-joinder and misjoinder, and these principles are to be applied in the light of Rules 18, 19, and 20."

As indicated by the above text works, Federal Rule 21 seems to have been intended primarily as the mechanism by which the court could enforce the requirements for joinder specified in Rule 20. Thus, if there was a proper joinder under Rule 20, there is ordinarily no occasion to either drop or sever a party under the provisions of Rule 21. Some exceptions have been developed to this general principle, but those exceptions are narrow and for the most part are geared to certain problems peculiar to Federal jurisdiction, venue, and transfer between districts for convenience of the parties. A listing and description of these exceptional situations are set forth in Federal Practice and Procedure, Wright and Miller, Civil, Second Edition, Vol. 7, § 1682, p. 321, and Moore's Federal Practice, Vol. 3A, § 21.05. (See especially pp. 21–27 to 21–29)

Adopting and applying the above general rules, a number of Federal cases have held that a party defendant may not be dropped under Rule 21 if he has been properly joined under the provisions of Rule 20: United States v. E. I. Du Pont De Nemours & Co., et al., D.C., 13 F.R.D. 490, l.c. 493; United States v. Commercial Bank of North America, D.C., 31 F.R.D. 133; Cahn v. International Ladies' Garment Union, D.C., 203 F.Supp. 191, l.c. 195, affirmed (3 Cir.), 311 F.2d 113; Kerr v. Compagnie De Ultramar (2 Cir.), 250 F.2d 860, l.c. 864.

■ In light of the historical background for the adoption of the modern codes of civil procedure and the interpretations and cases dealing with the parallel Federal Rule 21, we hold that generally speaking, Missouri Rule 52.06 does not authorize the dropping of any party who has been properly joined under the provisions of Rule 52.05. There may be extraordinary circumstances which might call for an exception in some particular case, but we find no such extraordinary circumstances presented here. A legal philosophy is declared by Rule 52.05 in favor of allowing a plaintiff to join defendants in the present situation. That which is given by one hand (under Rule 52.05) was not meant to be snatched away immediately by the other hand under Rule 52.06. Rule 52.06 was intended to enforce the limitations specified in Rule 52.05, not to permit the creation of ad hoc additional limitations in what is after all a rather routine situation. A necessary concomitant of providing for the joinder of multiple parties was a foreknowledge that the trial would thereby be made more complex. That result having therefore been in contemplation by Rule 52.05 the mere existence of some greater complications because of multiple parties, in ruling on evidence and submitting jury instructions, cannot be grounds for dropping parties under Rule 52.06.

In so ruling, we are not unmindful of the practical difficulties which are involved in proceeding with one trial against all four of these defendants.[1] While these problems do not constitute proper ground for dropping of parties under Rule 52.06, that does not mean that considerations bearing upon an orderly and efficient trial have to be disregarded. Those considerations can and should be taken into account under the authority conferred upon the trial court under Rule 66.02, which authorizes the granting of separate trials of any claim or of any separate issue "in the furtherance of convenience or to avoid prejudice".

Whether or not separate trials should be ordered will require a careful weighing of many conflicting factors as they apply to the particular facts of this case, some of which are now known and more of which may be developed by further pleadings and discovery proceedings in the court below. Most of the considerations pro and con in this type of situation were listed by the Montana Supreme Court in State ex rel. Stenberg v. Nelson, 157 Mont. 310, 486 P. 2d 870, l.c. 875–876, as follows:

"Applying these considerations to the instant case, we find many conflicting interests to be considered. From the standpoint of the petitioner it is advantageous to try all issues in a single trial. One trial will presumably be less expensive, time consuming, and enable all defendants to be before the same jury for determination of their respective liability; it may minimize the effect of one defendant attempting to shift the blame on the other; it may minimize delay in

---

1. For example, the further complication of cross claims for indemnification between the defendants is possible, as follows: Tenth and Main Corporation against all three doctors; Adelman against Abella and Overesch; and Abella against Overesch. The propriety of such claims for indemnification is annotated in "Right of Tortfeasor initially Causing Injury to Recover Indemnity or Contribution Causing New Injury or Aggravating Injury in Course of Treatment," 8 A.L.R.3d 639.

**158**

getting all of petitioner's claim adjudicated; and it will present but a single case for appeal.

"From the standpoint of defendants separate trials are more advantageous. Such procedure will avoid prejudicing the rights of any one defendant by reason of: the acts or omission of another defendant, confusing rulings on evidence applicable to one defendant and not another; confusing the jury by separate instructions applicable to but one defendant and not others and the greater possibility of error requiring a new trial. It is also to be noted that petitioner should be equally concerned with the avoidance of prejudicial error which will certainly be minimized by separate trials. What good is a verdict for petitioner if a new trial is ordered?"

In the above case the Montana Supreme Court, by a divided vote, affirmed an order for separate trials. On the other hand, courts in similar cases have reached a contrary conclusion: Wilson v. Algeria, 5 Misc.2d 520, 165 N.Y.S.2d 190; United States v. Anchor Line, Ltd., D.C., 232 F. Supp. 379; Potter v. Clark, 19 A.D.2d 585, 240 N.Y.S.2d 495; Mullett v. Sacco, 47 Misc.2d 441, 262 N.Y.S.2d 796. Bearing also on this general problem, see Prosser Law of Torts, Fourth Edition, § 47, p. 297–298 and p. 320–321.

· ■ There is still another possibility which should be noted. Rule 66.02 authorizes not only a separation of claims between defendants, but it would also authorize a separation of the issues of liability from the issues of damages. Under this "split trial" technique, all issues pertaining to the negligence of the various defendants would be submitted to the jury first. Then, after a verdict on those issues, evidence pertaining to damages would then be submitted to the same jury for the awarding of damages against those whom the jury had found liability pursuant to the first submission. For a discussion of this split trial technique, see "The Courts, the Public, and the

Law Explosion", Prentice Hall, 1965, Harry W. Jones, Editor for the American Assembly, Columbia University, pp. 46–49; 46 Minn.L.R. 1059; 3 Idaho L.R. 5.

Whether any further action should be taken under Rule 66.02, and if so what that action should be, is a matter for initial consideration by the trial court. Nothing stated herein is to be taken as any direction or intimation in that regard.

The preliminary rule in prohibition is made absolute.

All concur.